JiYELVERTON, Judge.
From a judgment in favor of the purchasers of a house in an action in redhibition, the defendant appealed and filed an exception of prescription. We overrule the exception of prescription. On the merits we affirm the judgment of the trial court.
| ¿¡Statement of the Case
The house was originally purchased by Mr. and Mrs. Don Alonso in 1982 from its builders, Mr. and Mrs. Sherman Rodriguez. It is located in Pineville, Louisiana. In another suit eleven years ago, before the action which is presently on appeal, the Alonsos filed an action in redhibition against the Rodriguezes alleging a defect in the design and construction of the foundation. This allegation was supported by the findings of Phillip Beard, a consulting civil engineer. However, the Al-onsos could not prove their case and lost it. The trial judge, in 1984, dismissed that suit. Mr. and Mrs. Alonso continued to reside in the home until he was transferred away from Pineville by his employer, Celeron Corporation.
Celeron Corporation was a client of the defendant, Merrill Lynch Relocation Management (MLRM), Inc., n/k/a Prudential Residential Services, Limited Partnership, d/b/a Prudential Relocation Management (herein Prudential), who agreed to assume the responsibility of selling the Alonso property. The Alonsos testified that they fully informed Prudential that their house had structural problems and that there had been litigation over those problems. Knowing of the report of the engineer, Phillip Beard, and the fact of earlier litigation, Prudential engaged two more engineers to look at the home. The first found structural problems, but the second, William Bowman, in a report dated November 12, 1984, noted no structural defects or slab damage. Prudential then offered to buy the home for $66,000.00. The Alonsos accepted the offer on December 17, 1984. Prudential paid the Alonsos what the Alonsos had in the property. Prudential did not actually take title.
Assuming the role of seller, Prudential listed the house with Stevens Realty. The present plaintiffs, Mr. and Mrs. Lee Leach, who were looking for a house | gthrough their own realtor, Rod Noles Realty, inquired with Stevens Realty. During negotiations, Mr. and Mrs. Leach were furnished, through Stevens Realty, the report of Prudential’s engineer, William Bowman. Mrs. Leach testified that she was not told of any foundation study or report done by any other engineer. Mr. and Mrs. Leach eventually executed a contract to buy on January 21, 1985, for $67,900.00. Prudential was not a signatory party to this contract. A little over a month later, on February 28,1985, an act of sale was passed showing the Alonsos as the sellers, represented by Kelly Hamm pursuant to a Power of Attorney, and Mr. and Mrs. Leach as the buyers. Prudential was not a party to the sale. Hamm sent a bill and correspondence relating to this sale to Prudential, and from this and other evidence in the record it is *347 apparent that Hamm was Prudential’s closing attorney as well as the attorney in fact of the Alonsos.
The plaintiffs moved in. They testified that they began to notice problems with the house by the following winter, notably a gap between the fireplace and wall that admitted cold air. They did not know at the time of the sale, but found out from neighbors, that there had been suspected structural problems with the house and that a lawsuit had been filed by the Alonsos. The plaintiffs commissioned their own structural inspection of the house on April 21, 1987. Richard Primeaux, a civil engineer, made an inspection and testified that the home had differential settlement problems in the foundation and needed extensive repairs.
On May 12,1987, Mr. and Mrs. Leach filed suit for reduction of the price and damages against the Alonsos and the Rodriguezes. Their original petition alleged that they had purchased the home from the Alonsos and that the home had been constructed by the Rodriguezes as builders and/or contractors. They further Ualleged that after they bought the home they became aware of cracks in the brick work, loose bricks, and other interior and exterior damage.
The Rodriguezes filed an exception of res judicata. The exception was granted in May 1992, and the Rodriguezes were dismissed.
On November 21, 1991, the plaintiffs filed an amended petition naming Prudential as an additional defendant. They claimed that Prudential was the actual owner/seller of the property made the subject of the litigation, or alternatively, had an interest in the property which placed upon it all of the duties and responsibilities of the owner of the property. The plaintiffs filed a second supplemental and amended petition pleading redhi-bition and seeking a solidary judgment against Prudential for rescission of the sale of the house, and in the alternative, a reduction of the price, plus damages including attorneys’ fees, and costs.

Action of the Trial Court

After trial, a judgment was rendered dismissing the Alonsos. The trial court found in favor of the plaintiffs and against Prudential, and ordered the rescission of the sale and the return of the purchase price, the expenses of the sale, all expenses incurred in repairs, attorney fees of $12,000.00 and general damages of $10,000.00 for inconvenience and aggravation, and signed a judgment accordingly. The defendant, Prudential, has appealed this judgment.

15Plea of Prescriptions

After the appeal was filed, Prudential for the first time raised the issue of prescription. It has filed in this court a plea of the redhibition prescription of one year.

Issues Presented for Review

I. Is the action for redhibition against Prudential prescribed?
II. Did the trial court err in ordering a rescission of the sale?
III. Did the trial court err in awarding damages for “inconvenience and aggravation”?
IV. Did the trial court err in awarding attorney’s fees in the amount of $12,-000.00?
V. Did the trial court err in awarding repair expenses?
I. Prescription
Mr. and Mrs. Leach bought the house on February 28, 1985. In April 1987, they became aware, through neighbors and an expert, that there was structural damage and that it was caused by vertical displacement of the slab and foundation. They sued the Al-onsos and the Rodriguezes on May 12, 1987. Prudential was not named a defendant in that original petition. Prudential was not sued until November 21, 1991, when they filed an amended petition naming Prudential as an additional defendant. On its face the claim is prescribed.
Prudential contends that under applicable law, the plaintiffs’ redhibition claim prescribed one year from the date of sale or, at the latest, one year from the Isdate of discovery. At the time this action arose the general rule for prescription of a redhibitory action was stated in La.Civ.Code art. 2584 *348 (1870), in pertinent part: “[t]he redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale” — -in this instance, February 28, 1985. This general rule was qualified by La.Civ. Code art. 2545, making a seller liable “who knows the vice of the thing he sells and omits to declare it”, and 2546, which provided that the action for redhibition “may be commenced at any time, provided a year has not elapsed since the discovery of the vice”— which we find in this instance to have been April 22, 1987.
Prudential was not named as a defendant until November 21, 1991. It is Prudential’s position that under either scenario, the plaintiffs’ claims prescribed one year from the date of sale, on February 28, 1986, or one year from the date of discovery of the defect, on April 22, 1988.
The plaintiffs contend that their claim against Prudential has not prescribed for two reasons. First, they invoke the jurisprudential doctrine of contra non valentem agere nulla currit ‘praescriptio, claiming that they were unaware that Prudential was the disguised owner-seller of the house. Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3 Cir.1986). Secondly, they argue that their suit was timely because the action against Prudential qualifies as an action for fraud under La.Civ.Code art. 2547, and that that action is governed by a five-year prescriptive period. Prudential responds that the doctrine of contra non valentem is inapplicable and that the plaintiffs’ claims should be found to have prescribed. Additionally, Prudential argues that the plaintiffs cannot reinvent their lawsuit on appeal as a fraud claim.
|7The doctrine of contra non valen-tem is an exception to the general rules of prescription which means that prescription does not run against a person unable to bring an action or a person who for some reason is unable to act. The Louisiana Supreme Court in Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979), recited those situations in which the doctrine may apply to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiffs actions; (2) Where there was some condition coupled with the contract or coupled with the proceedings which prevented the creditor from suing or acting; (3) Where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action was not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. We find that the situation which fits the plaintiffs’ case is No. (4) above. The record reveals that the transactions concerning the sale occurred strictly between Prudential and the Alonsos. From the outset, Mr. and Mrs. Leach had no way of knowing Prudential’s precise involvement. Thus, the plaintiffs were prevented from knowing or acting upon their cause of action.
Prudential argues that the testimony of Mrs. Leach and the evidence shows that the plaintiffs and their real estate agent were aware that Prudential had taken over the property from the Alonsos. At trial Mrs. Leach testified that it was relayed to her through her real estate agent that the house was taken over by Prudential’s predecessor, Merrill Lynch Relocation Management, Inc. She also testified that all dealings regarding the house were with her real estate agent and the agent from Stevens Realty who was handling everything for Merrill Lynch. Through | gthe testimony of Mrs. Leach, along with the contract to buy and sell executed on January 19, 1985, Prudential argues that the plaintiffs knew that Prudential was the seller of the house.
Our interpretation of the testimony of Mrs. Leach is that she knew only that the property had been taken over by Prudential, in some capacity as agent for the sellers. She did not know that Prudential was the actual seller. Further, the contract to buy and sell listed Mr. and Mrs. Leach as the buyers and was signed only by Mr. and Mrs. Leach. All other information contained in the contract was typewritten, except the name of Merrill Lynch which was handwritten. The contract was not signed by anyone in the capacity of seller. The Cash Sale and Assumption executed on February 28, 1985, transferring the property to the Leaches, shows the Alonsos as sellers, represented by Kelly Hamm *349 through a Power of Attorney. There is nothing in the record or in their dealings to suggest to Mr. and Mrs. Leach that it was Prudential, and not the Alonsos, that owed them a warranty against redhibitory vices. We make the factual finding that Prudential was the disguised owner. See Fogal, 497 So.2d 866.
A cause of action against Prudential was not known or reasonably knowable by the plaintiffs until they discovered that Prudential was actually the owner of the home that they purchased. Terrebonne v. Theriot, 94-1632 (La.App. 1 Cir. 6/23/95); 657 So.2d 1358. Prescription does not begin to run at the earliest possible indication that the plaintiff may have suffered some wrong, but rather it begins to run when the plaintiff has a reasonable basis to pursue a claim against a specific defendant. Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987). Prescription did not begin to run until the Leaches had a reasonable basis to pursue Ua claim against Prudential. The series of transactions between Prudential and the Al-onsos were not known to the Leaches. They were unaware of Prudential’s contract with Mr. Alonso’s employer under which it assumed the obligation of seller. The Leaches testified and all outward appearances confirmed that the Alonsos were the owners. It was only later in discovery in 1991 that the role of Prudential came to light. It was at this point that the Leaches had a reasonable basis to pursue a claim against Prudential.
The focus is on the reasonableness of the claimant’s action or inaction. In re Medical Review Panel of Howard, 573 So.2d 472 (La.1991). Prudential argues that the plaintiffs’ failure to obtain information concerning its role in the sale for more than four years after institution of the original petition was neither reasonable nor diligent. It contends that such information could have been discovered from the Alonsos’ answer to the plaintiffs’ original petition. That is so, but the Alonsos’ answer was not filed until 1991, through no fault of the plaintiffs. They then learned that Prudential occupied the status of the actual owner/seller of the house. It was then that the Leaches filed an amended petition naming Prudential as a defendant.
Prudential argues that ignorance of the proper identity of a defendant does not toll the running of prescription and that this has been carefully distinguished from ignorance of a cause of action. Prudential relies on the rationale of Patin v. Stockstill, 315 So.2d 868 (La.App. 1 Cir.1975) requiring “reasonable diligence on the part of the plaintiff to ascertain the identity of the party injuring him_” Prudential’s reliance on Arcen-eaux is not applicable here. In Arceneaux the plaintiff knew that the defendant was the wrongdoer and had means of discovering his identity. The police report contained the license plate number of the offender’s liovehicle and the plaintiff had a copy of the police report. For these reasons, the Court in Arceneaux found the doctrine of contra non valentem inapplicable and that the plaintiffs action had prescribed. In the instant case, the Leaches were misled to believe that the actual parties liable for the alleged defects were the Alonsos.
The equitable nature of the circumstances in each individual case has determined the applicability of contra non valen-tem. Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1 Cir.1970). Our decision is that the doctrine of contra non valentem saves this case from the effect of prescription. It is unnecessary for us to consider whether the action against Prudential qualifies as an action for fraud under La.Civ.Code art. 2547, and whether a five-year prescriptive period is applicable. We overrule the exception of prescription.
II. Rescission of the Sale
The trial judge in her reasons for judgment found that Prudential was a bad faith vendor and the only adequate remedy was rescission of the sale. Prudential contends that the trial judge erred in ordering a rescission of the sale in light of the testimony regarding the continuous and uninterrupted use of the home and the testimony regarding the nature and cost of repairs recommended by the plaintiffs’ experts. It urges that the award should have been limited to a reduction in the purchase price.
*350 The decision to award a rescission of the sale or a reduction in the purchase price in redhibitory actions is essentially a factual determination best made by the trial court. Fogal, 497 So.2d 366; Ark-La-Tex Builders & Realty, Inc. v. Hoge, 344 So.2d 90 (La.App. 2 Cir.1977). The record contains the testimony of two | nengineers and a contractor, all of whom agreed there were serious structural defects that have led to multiple problems, including sewer work, electrical repair, cracked walls, sticking doors, and water entry into the house. The trial judge concluded that these factors, coupled with Prudential’s misrepresentation of the structural integrity, compelled the conclusion that the plaintiffs would not have purchased the house had they known of the defects. This decision was not manifestly erroneous. Rescission was an appropriate remedy.
III. Damages for Inconvenience and Aggravation
The trial judge awarded damages in the amount of $10,000.00 for inconvenience and aggravation. Prudential contends that damages for inconvenience and aggravation are not compensable in an action for redhibition.
The trial judge, in her reasons for judgment, simply classified the award as damages for inconvenience and aggravation. In Guillory v. Jim Tatman’s Mobile Homes, Inc., 490 So.2d 1185 (La.App. 3 Cir.1986), this court opined that a knowing sale of a redhibitorily defective product is a tortious act, and that awards of damages for mental anguish and for inconvenience, two separate and distinct compensations, were proper.
The trial court determined that Prudential was a bad faith seller. The trial court found, as a fact, that Prudential had obtained two engineering studies of the slab problem, one unfavorable and the other favorable, and that it had elected to disclose the favorable report, when asked, but not the unfavorable one. The trial court concluded, based on this and other findings, that Prudential was a bad faith vendor within the meaning of La.Civ. Code art. 2545. The misrepresentation by | ^Prudential understandably caused inconvenience and aggravation related to the enjoyment of living in a home free of defects and litigation. The award of damages for inconvenience and aggravation made by the trial court was proper.
IV. Attorney’s Fees
Prudential contends that the award of $12,000 for attorney’s fees was improper because the only evidence was the invoice of the plaintiffs’ attorney for a total of $7,601.50. It also urges that the record contains no evidence to support such an award.
This court in Guillory, 490 So.2d at 1190, held that in determining what is a reasonable amount for statutorily imposed attorney’s fees in a redhibition case, the following factors are considered:
(1) The responsibility incurred;
(2) The extent and nature of the work performed;
(3) The legal know how and skill of counsel.
The trier of fact is afforded great discretion in determining what amount constitutes reasonable attorney’s fees. Id.
Mrs. Leach testified at trial that the bills received from their attorney did not include trial preparation or appearance for trial. After considering the record in this case, the complexity of the issues involved, and the time spent in preparation and at trial, we find support for the trial judge’s award of $12,000.00 for attorney’s fees, and it is, therefore, not excessive.
| iaV. Repair Expenses
The trial judge in her reasons for ruling concluded that the plaintiffs were entitled to all expenses incurred in repairs. The final judgment sets the repair expenses in the amount of $1,230.79. This amount represents the total from the various invoices for carpet cleaning and plumbing repairs introduced into the record. Prudential argues that the court erred in awarding these expenses, contending that no expert testimony connected these expenses to the defect in the home. Phillip Beard, a consulting engineer, testified that the instability of the slab would cause pipes in the house to crack. Mr. Beard further testified that it was not uncommon for pipes to break due to the move *351 ment of the slab. Based on this evidence, the conclusion reached by the trial court in awarding the expenses for repairs was appropriate.
For the foregoing reasons, we overrule the exception of prescription, and affirm the judgment of the trial court, at the cost of exceptor-appellants.
EXCEPTION OF PRESCRIPTION OVERRULED; JUDGMENT ON THE MERITS AFFIRMED.