727 So.2d 664 (1999)
Donald B. LONG, III, and Kathryn Waller Long, Plaintiffs-appellants,
v.
Thomas BRUNS and Virginia M. Bruns, Defendants.
No. 31,427-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
*665 J. Ransdell Keene, Shreveport, Counsel for Appellants.
Richard S. Derbes, Baton Rouge, Counsel for Appellee, Boatmen's Relocation Management.
Before HIGHTOWER and PEATROSS, JJ., and PRICE, J. Pro Tem.
PEATROSS, J.
Donald and Kathryn Long ("Plaintiffs") filed this redhibitory action against Thomas and Virginia Bruns ("Bruns") on August 11, 1986, seeking reduction of purchase price for diminution in value and cost of repairs to the home Plaintiffs had purchased located on Nottingham Drive, Pepper Ridge Subdivision, in Shreveport. On February 3, 1987, the Bruns filed a reconventional demand *666 against Plaintiffs and a third party demand against the builder and designer of the home. On August 10, 1987, the Bruns filed a supplemental third party demand against Boatmen's Relocation Management ("BRM").[1] On November 29, 1990, Plaintiffs filed a first amended petition requesting recission of the sale, return of purchase price, cost of repairs and improvements, penalties and attorney fees. On November 5, 1993, Plaintiffs filed a second amended petition naming BRM as a direct defendant. BRM filed an exception of prescription which was denied. Pursuant to a settlement, Plaintiffs executed a release of all parties except BRM and reserved the right to proceed against BRM.
After a trial on the merits, the trial court found in favor of BRM and dismissed the Plaintiffs' claims with prejudice. The trial court specifically found BRM to be an agent of the Bruns, rather than a seller, and, therefore, not liable in redhibition. The trial court further found that, on releasing the Bruns as principals pursuant to the settlement, the Plaintiffs also released BRM as their agent. Finally, the trial court found Plaintiffs had failed to prove fraud or negligent misrepresentation on the part of BRM acting as agent in the sale of the home.
Plaintiffs appeal the judgment of the trial court in favor of BRM asserting two assignments of error: (1) the trial court erred in holding that BRM was not a seller or co-seller of the home, but rather an agent for the Bruns; (2) the trial court erred in holding that BRM, as an agent/broker, did not breach a duty owed to Plaintiffs under the theories of fraud or negligent misrepresentation. BRM has answered the appeal and raised the issue of prescription of Plaintiffs' claims. For the reasons stated herein, we affirm the trial court's judgment in favor of BRM.

FACTS
On August 12, 1985, Plaintiffs purchased the residence on Nottingham Drive in Shreveport. At the time of the sale, the conveyance records of Caddo Parish showed the Bruns to be the owners of the home. Thomas Bruns was employed by Emerson Electric Company ("Emerson"). At some time prior to the sale of the home, Mr. Bruns was transferred to Cincinnati. Emerson had an agreement ("Agreement") with BRM whereby BRM would provide relocation services to Emerson and its employees. This service was provided to the Bruns enabling them to move to Cincinnati without having to first sell their home in Shreveport.
On August 8, 1984, pursuant to the Agreement between Emerson and BRM, the Bruns exercised the Option 1Home Sale provision whereby the Bruns had the option to sell their home for the appraised value pursuant to a "Home Agreement" ("Home Agreement"). The Bruns and BRM entered into a Home Agreement on July 27, 1984, whereby the Bruns would be paid $259,000, the appraised value, for their home. The Home Agreement required the Bruns to execute a Power of Attorney appointing BRM, its designee, or any agent or broker selected by BRM to "make, enter into and execute any Sale Contract(s) with any purchaser(s) of the property described herein, for whatever price and on whatever terms and conditions may be agreeable to [BRM]." In accordance with the Home Agreement, the Bruns were to convey good and marketable fee simple title to the property to BRM, its designee, or a purchaser by a properly executed deed conveying marketable fee simple title.
Acting under the power of attorney, BRM entered into a Sales Agreement with Plaintiffs. The Sales Agreement reflects the Bruns' approval of the agreement as sellers of the property and is signed by Gary Feller, the representative of BRM responsible for the management of the Bruns' property, as attorney-in-fact for the Bruns. The Bruns subsequently executed a $225,000 cash sale deed to Plaintiffs on August 6, 1985, recorded *667 in the conveyance records of Caddo Parish on August 12, 1985.
Shortly after moving into their new home, Plaintiffs began remodeling and lifted the carpet in the den to reveal cracks in the foundation. Thereafter, a series of unfortunate events occurred, involving the shifting of the foundation and extensive plumbing problems. None of the parties in this case dispute the severity of the defects in the home. The inability of Plaintiffs to remedy the defective condition of the home ultimately resulted in Plaintiffs leaving the home and filing the instant lawsuit.

STATUS OF BRM
The action for redhibition is between vendor and purchaser and cannot be maintained absent such relationship. Hostetler v. W. Gray & Co., Inc., 523 So.2d 1359 (La.App. 2d Cir.1988), writ denied, 531 So.2d 470 (La.1988); Duplechin v. Adams, 95-0480 (La.App. 1st Cir.11/9/95), 665 So.2d 80, writ denied, 95-2918 (La.2/2/96), 666 So.2d 1104; Leflore v. Anderson, 537 So.2d 215 (La.App. 4th Cir.1988). The pleadings in this case support a suit in redhibition against the "sellers" of the Nottingham property. Plaintiffs' allegations speak only in terms of the "sellers" of the property; nowhere in the three petitions filed by Plaintiffs do Plaintiffs allege that BRM was in fact a seller, co-seller or disguised seller of the property. In fact, in their second amended petition, ¶ 24, Plaintiffs allege "GenRel and Oscar Cloyd, Inc. were agents of the sellers and had a duty to disclose. ..." (emphasis added). Since Plaintiffs did not allege any vendor/purchaser relationship between BRM and themselves, clearly the redhibition claim against BRM cannot stand. In addition to Plaintiffs' failure to sufficiently allege BRM status as sellers, we agree with the trial court that the evidence supports BRM's status as agent of the Bruns, rather than seller, co-seller or disguised seller.
Plaintiffs argue that the documentary evidence, particularly the Home Agreement between BRM and the Bruns, clearly demonstrates BRM's status as seller or co-seller of the property; and, therefore, BRM may be held liable in redhibition. We disagree. The key document is the Home Agreement which is the contract between the Bruns and BRM. As the trial court stated, the Home Agreement "clearly provides for an agency relationship." On execution of the Home Agreement, it is true that BRM became responsible for the management and maintenance of the home. The listing of the home, as well as all activities associated with the marketing and sale of the home, were also BRM's responsibilities. BRM, however, never took title to the property. While BRM had the Bruns' power of attorney to enter into a sales contract for the sale of the home, BRM did not have the power to actually sell the property. The property could not be sold without the Bruns' participation because, under the Home Agreement, the Bruns were required to assist at closing by signing the necessary documents to convey title.
Pursuant to the Agreement between Emerson and BRM, BRM was paid a fee for its relocation services. Any loss or gain on the sale of the Bruns' home was borne by Emerson, not BRM. Likewise, any expenses incurred in the marketing and sale of the property were paid by Emerson.
In addition to the Agreement between Emerson and BRM and the Home Agreement between BRM and the Bruns, all documents executed in conjunction with the listing and sale of this property clearly defined the parties. The Bruns are at all times listed as the sellers.[2] BRM is at all times listed as agent or attorney-in-fact for the Bruns. It is clear that BRM was acting as agent for the Bruns and not as a seller or co-seller as asserted by Plaintiffs.[3] Since BRM was not a vendor of *668 the property, it cannot be subjected to an action in redhibition.[4]Hostetler v. W. Gray & Co., Inc., supra; Duplechin v. Adams, supra; Leflore v. Anderson, supra.
Plaintiffs cite the cases of Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3rd Cir.1986), and Leach v. Alonso, 95-325 (La.App. 3rd Cir.10/4/95), 663 So.2d 344, writ denied, 95-2662 (La.1/26/96), 666 So.2d 671, in support of their argument that BRM was at least a co-seller or disguised seller of the property. In Fogal, Merrill Lynch Relocation Management, Inc. had an agreement with the Boudreauxs' employer whereby it would purchase any transferred employee's home at its appraised value. The Boudreauxs accepted an offer to sell to Merrill Lynch for a price of $61,950. The sale was evidenced by a notarized contract of sale by the Boudreauxs dated July 10, 1981. Merrill Lynch did not record this instrument of record. On that same day, the Boudreauxs executed a power of attorney naming a representative of Merrill Lynch as their duly authorized agent and attorney-in-fact to sell the property on such terms and conditions as the representative deemed proper. The Boudreauxs were paid their equity in the house and, thereafter, did not pay any mortgage notes, taxes or insurance on the house and did not have any further contact with Merrill Lynch. Subsequently, the Fogals executed a purchase agreement, which was accepted by Merrill Lynch as owner. The representative of Merrill Lynch who possessed the Boudreauxs' power of attorney subsequently executed a cash deed to the plaintiffs in his capacity as agent for the Boudreauxs. The court correctly found that Merrill Lynch's failure to record the contract of sale did not vitiate its status as owner/seller of the property. On execution of the contract of sale between the Boudreauxs and Merrill Lynch, the Boudreauxs were divested of any indicia in the ownership of the house and all rights, title and interest in the property. In finding Merrill Lynch to be a disguised seller of the property, the court, in Fogal, significantly noted that the "record is void of any evidence that Merrill Lynch acted merely as a broker."
In Leach, supra, a more recent third circuit case, the court held that a claim against Prudential Relocation Management, formerly Merrill Lynch Relocation Management, had not prescribed where the plaintiffs did not become aware of Prudential's involvement in the sale of the home until well into the litigation. In Leach, the plaintiffs sought to invoke the jurisprudential doctrine of contra non valentem agere nulla currit praescriptio, claiming that they were unaware that Prudential was the disguised owner/seller of the house. In response, Prudential argued plaintiffs knew that Prudential was the seller of the house. The distinguishing feature in Leach, from the instant case, is that all parties in Leach agreed that Prudential was, in fact, the owner/seller of the property. The issue in Leach, therefore, was not whether Prudential was or was not an owner/seller, but, at what point in time the plaintiffs became aware of Prudential's status for purposes of prescription.[5] We are not persuaded by either of Plaintiffs' cited authorities, as we find both Fogal and Leach are clearly distinguished on their facts.
Since we agree with the trial court that BRM was at all times the agent of the Bruns, we find the trial court was correct in finding that the release of the Bruns, as principals, also released BRM.

*669 NEGLIGENT MISREPRESENTATION
In Plaintiffs' second assignment of error, they assert that once the trial court found BRM to be an agent of the Bruns rather than a seller, the trial court erred in finding that BRM, in its capacity as agent, did not breach a duty owed to Plaintiffs under the theories of fraud or negligent misrepresentation.
As previously stated, the severity of the defects in the home purchased by Plaintiffs is not in dispute. It is clear from the evidence that the house was too heavy for the land on which it was built, resulting in an unstable and shifting foundation. Plaintiffs made an initial effort to stabilize the house, but the house continued to shift and the foundation problems persisted. The videotapes and other evidence proved massive problems with water and sewerage bubbling up through the cracks in the foundation as a result of a sewerage sludge pond having formed under the foundation. The home was uninhabitable for Plaintiffs and their small children.
The remedy of a purchaser of real property against a real estate agent is in damages for fraud or negligent misrepresentation. Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183; Rodgers v. Johnson, 557 So.2d 1136 (La.App. 2d Cir. 1990). In reviewing negligent misrepresentation cases, the appellate courts' approach has been to integrate the tort doctrine into the duty/risk analysis. In order for the doctrine to apply, three circumstances must occur: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to plaintiff. Application of the duty/risk analysis is employed by our courts on a case-by-case basis. Nesbitt v. Dunn, 28,240 (La.App.2d Cir.4/3/96), 672 So.2d 226. In cases involving brokers or realtors, courts have held the realtor or broker has a duty to disclose to purchasers defects of which he has knowledge. Id. Where, however, the alleged misrepresentations relate to defects which are apparent and discoverable on simple inspection, which inspection is afforded the buyer before the sale, and where the buyer inspects the property before the sale, the buyer cannot then complain of fraud or negligent misrepresentation. White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2d Cir.1974).
Plaintiffs assert that BRM's representative, Gary Feller, had knowledge of and failed to disclose the existence of a hidden defect, i.e, a crack in the outside wall of the house. About the time Plaintiffs were looking at the house, but before they had made an offer, Mr. Feller asked Louise Tyler, a local realtor, to inspect the property and provide him with a Broker's Price Opinion of the home. In relating her opinion to Mr. Feller, Ms. Tyler testified that she mentioned several cracks she had observed in the garage floor and a crack in the outside wall near the fireplace. Ms. Tyler further testified that the crack was visible and that anyone could have seen it. BRM argues, therefore, that there was no hidden defect at all, since the crack was discoverable by simple inspection. We agree.[6]
As previously stated, there can be no recovery in negligent misrepresentation for defects discoverable by simple inspection and where the buyer inspects the property prior to purchasing it. It is the Plaintiffs' burden to prove that the alleged defects were hidden. White, supra. To determine whether a defect is apparent, one must consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. Pursell v. Kelly, 244 La. *670 323, 152 So.2d 36 (La.1963); Dodd v. Tucker, 528 So.2d 644 (La.App. 2d Cir.1988).
We find the alleged crack in the exterior brick of the Nottingham home was discoverable on simple inspection. First, Plaintiffs rely primarily on Ms. Tyler's testimony, that she saw the crack, to establish Mr. Feller's knowledge of the crack and his subsequent failure to disclose its existence to Plaintiffs. Ms. Tyler's testimony, however, works to Plaintiffs' disadvantage. Since Ms. Tyler saw the crack during her inspection, it must be visible to one looking for such problems; in fact, she testified that anyone could have seen it. Second, Plaintiff Donald Long, a realtor with experience in purchasing property, indicated in the Sales Agreement, which he provided, that he had inspected the property. During his inspection, Mr. Long noticed the cracks in the garage floor but made no further inquiry or investigation. The trial court stated: "[w]hen balanced with the claim that Mr. Feller (located out of state and never having been to the property) had more knowledge about the property than Mr. Long, that claim is not convincing." We agree and find that a reasonably prudent buyer under similar circumstances as Plaintiffs would have observed the crack.
Since the crack was not a hidden defect and Plaintiff Donald Long inspected the property before purchasing it we find that Mr. Feller had no duty to disclose its existence to Plaintiffs. As such, the trial court was correct in finding Plaintiffs failed to prove fraud or negligent misrepresentation.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed and all costs are assessed to Plaintiffs.
AFFIRMED.
NOTES
[1] This relocation management company has undergone several name changes prior to, and during the course of, this litigation. Throughout the record, the following three names are used interchangeably and all refer to the same company: (1) Bank of St. Louis Relocation Service or "the Bank"; (2) General or GenRel Relocation Management Group or "GenRel"; (3) Boatmen's Relocation Management or "Boatmen's". For clarity, we have used "BRM" throughout this opinion.
[2] In its efforts to sell the home, BRM listed the property with two Shreveport realty companies. In each listing agreement, the Bruns are listed as the sellers. Additionally, on the Sales Agreement prepared by Plaintiff Donald Long, the Bruns are listed as the sellers with BRM signing as attorney-in-fact for the Bruns.
[3] Since we find that BRM was not a seller or co-seller, but rather an agent of the Bruns, we need not address the argument of Plaintiffs that BRM was not only a seller, but was a bad faith seller because of its failure to disclose the existence of a crack in the outside wall of the house.
[4] BRM has answered the appeal raising the issue of prescription of Plaintiffs' claims. The trial court denied BRM's exception of prescription in an earlier ruling based on its finding that BRM was a solidary obligor. The trial court held, therefore, that prescription was interrupted by the filing of the original suit against the Bruns. After the taking of evidence at trial, the trial court acknowledged its error in the prior ruling on prescription and concluded that BRM, as agent of the Bruns, was not, in fact, solidarily liable with the Bruns. Since we affirm the judgment of the trial court in favor of BRM, we pretermit any further discussion on the issue of prescription.
[5] While the third circuit in Leach did "make the factual finding that Prudential was the disguised owner" of the property, such a finding was not required for disposition of the case on the issue of prescription, which was the sole issue on appeal, because Prudential's status as owner/seller was not in dispute. As such, we consider any discussion of Prudential's status as dicta which does not govern our decision in the instant case.
[6] The trial court stated, "[t]he duty to disclose urged by plaintiffs that [BRM] owed to them was actually the duty owed by the vendornot an independent duty owed to plaintiffs by [BRM] by law or by contract." The trial court is correct that the vendor does owe such a duty to a purchaser. In addition to the vendor's duty of disclosure, however, an agent or broker, such as BRM, may also be liable in fraud or negligent misrepresentation where the agent fails to disclose a material hidden defect to the purchaser. Since we find that there was no hidden defect of which BRM had knowledge in this case, we conclude that there was no duty to disclose on the part of BRM in its capacity as agent of the Bruns.