WHIPPLE, C.J.
*586 This matter is before us on appeal by plaintiff, Deborah Riedel, individually, and on behalf of her minor children, Rachel Riedel and Jeremy Canzoneri, (collectively referred to as "Riedel") from a judgment of the trial court granting summary judgment in favor of defendants, Frank and Theresa Cali, and dismissing Riedel's claims against them with prejudice. For the reasons that follow, we recall the show cause order and affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
In 2014, Riedel sought the assistance of Angie Fenasci, a real estate agent employed by Hollie Realty, L.L.C./RE/MAX Northshore, in locating and purchasing a home. Their search led to a condominium located at 2700 Rue St. Martin, Unit A, in Hammond, Louisiana, that was owned by Frank and Theresa Cali. Although Frank Cali was a real estate agent by trade, the Calis listed the unit for sale through Landon Yarborough, who is the nephew of Theresa Cali and a licensed real estate agent for Coldwell Banker/Bobby Tallo Realty. Yarborough had lived in the condominium for approximately a year prior to its sale. The Calis granted Yarborough a specific power of attorney to execute all documents necessary to sell the condominium.
On April 25, 2014, the parties entered into a purchase agreement, which provided that the sale was "as is" without any warranties and that the buyer waived and released the seller from any claims of redhibition. Riedel also completed an "Owner Finance Application" to secure potential financing for her purchase of the property.
A few days later, on April 28, 2014, Riedel, through her agent, Fenasci, commissioned a pre-sale home inspection of the property by Dale Brunet of Brunet's Home Inspection, LLC, which was conducted on April 30, 2014. Following the inspection, Brunet issued a report on May 1, 2014, containing a list of thirty-three discrepancies found during the inspection.[1] Based on the findings noted in Brunet's report, on May 2, 2014, Riedel executed a "PROPERTY INSPECTION RESPONSE" form, citing the deficient conditions and stating her desired remedy by the seller, as follows:
Cover on AC condenser is off - Cover needs to be properly installed Shower head on master bath is leaking - replace shower head preferably with a hand held Tub in master bath is leaking and needs caulking - Have tub caulked to prevent leaking Toilet in [m]aster bath does not flush - Have toilet in proper working order
Yarborough executed the response form on May 3, 2014, indicating that the sellers would have all deficiencies corrected no later than five calendar days prior to the act of sale. On May 4, 2014, Riedel executed a final response form, indicating that she accepted the seller's response and would proceed toward act of sale.
The closing was scheduled for May 9, 2014. At that time, Riedel signed a "Final Inspection Release" advising that a reinspection of the property had been performed and that the property was in the same or better condition as it was at the time of the initial inspection, that reinspection of the property revealed that the deficiencies previously cited in the "Property Inspection Response" form had been satisfactorily *587 corrected, and that the condition of the property was acceptable.
Thereafter, Riedel also executed a "Note" and "Credit Deed" through which she purchased the property from the Calis for the sum of $67,500.00. Riedel placed a down payment of $25,000.00 and financed the balance of $42,500.00 with the Calis with 6.75% interest until paid in full via an owner-financed promissory note. Under the terms of the note, Riedel was to make 240 equal monthly installments of $323.15 each commencing June 1, 2014, and on the same day of each month thereafter until paid.
Similar to the purchase agreement, the credit deed also contained an "AS IS/WHERE IS" clause, whereby the buyer and seller "expressly agreed" to certain waivers. The clause was specifically initialed by both the buyer and seller and provided as follows:
It is expressly agreed that all of the movable or immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems and all of the items located hereon are conveyed by Seller and accepted by Purchaser "AS IS", "WHERE IS", without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operations, rules, regulations, and/or ordinances of any kind, type, or nature of local, Parish, State and/or Federal entities or suitability of such properties for the use intended by Purchasers, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects. Purchasers acknowledge and declare that neither the [S]eller nor any party whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statements, representation or declaration, whether by written or oral statement or otherwise, and upon which Purchasers have relied, concerning the existence or nonexistence of any quality, characteristic or condition of the property herein conveyed. Purchasers have had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion deems sufficiently diligent for the protection of Purchaser's interests. Purchasers expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 and 2548, inclusive, and any other applicable State and Federal Law and the jurisprudence thereunder. Purchaser also waives any rights Purchaser may have in redhibition or to a reduction of the purchase price pursuant to Louisiana Civil Code Articles 2520 and 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers, and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Articles 2520 through 2548, inclusive.
Riedel contends that after moving into the home, she detected moisture and smelled a "strong odor" that worsened each day and that she and her children "began feeling very ill and developed illnesses." Riedel further averred that she requested a copy of Brunet's home inspection report because she "wanted to see what the inspection report stated," which Fenasci subsequently produced.
*588 On July 16, 2014, Riedel filed a claim with State Farm Fire and Casualty Company ("State Farm"), her homeowner's insurance carrier, seeking to recover for mold and moisture damage to the condominium. After conducting an inspection on August 7, 2014, State Farm advised Riedel by letter dated September 10, 2014 that a supply line from the second floor bathroom showerhead had been leaking and caused water damage to the first floor kitchen ceiling. State Farm thus denied the claim, noting that the "damages in the kitchen showed evidence of long-term damage, rot, [and] deterioration" and further cited provisions of her policy that excluded coverage for losses due to or remediation of "fungus."[2]
Riedel then hired Colonial Inspection Services to conduct a mold inspection of the property. The inspection was conducted on October 30, 2014, and a report accompanied by a certificate of mold analysis was subsequently issued, finding there was suspected visible mold in the home.
On May 6, 2015, Riedel individually, and on behalf of her minor children, filed a petition for damages against Fenasci, Hollie Realty, L.L.C./RE/MAX Northshore, the Calis, Yarborough, and Coldwell Banker Bobby Tallo Realty, L.L.C., asserting claims of fraud and misrepresentation and contending that they "had to have known" about the moisture and mold in the home before it was sold. Riedel asserted breach of fiduciary duty claims against Frank Cali, Landon Yarborough, and Angie Fenasci as licensed agents and breach of contract claims and "re-habitation violations" against Frank and Theresa Cali as owners of the property. Therein, Riedel sought damages for illnesses and injuries that she and her children suffered purportedly as a result of exposure to "black mold" found in the home. Riedel further averred that her condition is "permanent and irreversible."[3]
The Calis answered the petition and subsequently filed a reconventional demand against Riedel, as holders of the May 9, 2014 promissory note, averring that Riedel had not made any payments on the promissory note since her payment in December of 2014, and had further defaulted on payment of ad valorem taxes imposed on the property by the Parish of Tangipahoa and the City of Hammond. The Calis thus sought judgment in their favor condemning Riedel to pay them the sum of $41,862.34 plus interest at 6.75% per annum until paid, together with an additional sum for late charges, reimbursement of ad valorem taxes paid by the Calis, and 25% of that amount as attorney's fees and costs.
On June 14, 2017, the Calis filed a motion for summary judgment seeking dismissal of Riedel's claims against them asserted in her main demand, contending that Riedel could submit no competent evidence to substantiate the allegations in her petition that the mold existed in the condominium on or before the date of the sale, that Frank or Theresa Cali knew or should have known of any alleged mold in the condominium on or before the date of sale, *589 nor any evidence that would establish medical causation for any of Riedel's alleged injuries or medical conditions as being related to alleged mold exposure.
Thereafter, Fenasci and Hollie Realty, L.L.C. also filed a motion for summary judgment seeking dismissal of Riedel's claims against them. The Calis, as plaintiffs-in-reconvention, also filed a motion for summary judgment seeking judgment in their favor on the claims asserted against Riedel in their reconventional demand.
All three motions for summary judgment were heard before the trial court on August 28, 2017. At the conclusion of the hearing, the trial court found that no facts had been presented or showing made to indicate that Frank or Theresa Cali and Fenasci had any knowledge that mold was present at or before the time of sale and that no evidence had been submitted to show medical causation. The trial court thus granted the motions for summary judgment brought by defendants, Frank and Theresa Cali, Fenasci, and Hollie Realty, L.L.C. The trial court further granted the motion for summary judgment by Frank and Theresa Cali, brought in their capacity as plaintiffs-in-reconvention, on the claims asserted against Riedel in their reconventional demand for her default on the note.
Following Riedel's request, the trial court issued written "Reasons for Judgment" on September 25, 2017. The trial court concluded that due to certain waivers contained in the credit deed, fraud was the only valid claim that could be asserted against the Calis, and because Riedel could submit no evidence that the Calis had knowledge of mold at the property to support her fraud claim, Riedel's claim fails.
The trial court subsequently signed a judgment on October 4, 2017, granting the motion for summary judgment on the issues of both liability and medical causation in favor of Frank and Theresa Cali as defendants and against Riedel individually, and on behalf of her minor children, dismissing, with prejudice and at Riedel's costs, all claims alleged by Riedel against the Calis.[4]
Riedel then filed the instant appeal, contending that the trial court erred in:[5]
(1) finding that no genuine issue of material fact exists as to negligent misrepresentation as pled under LSA-C.C. art. 2315 ;
(2) finding that no genuine issue of material fact exists as to fraud as pled under LSA-C.C. 1953 ;
(3) finding that no genuine issue of material fact exists as to whether the real estate agents/brokers failed to disclose under LSA-R.S. 37:1455(27) ;
(4) failing to find that the actions of agent Yarborough, as employee and through Power of Attorney, are imputed to his employers, Frank and Theresa Cali;
*590 (5) finding that there was evidence or material fact showing that the property had mold before Riedel purchased it;
(6) ignoring and/or disregarding the expert report and opinion and findings of Riedel's mold expert, Julie Hufft;
(7) dismissing Riedel's breach of contract cause of action;
(8) dismissing Riedel's cause of action in redhibition; and
(9) dismissing Riedel's cause of action relating to violations of agent/broker requirements, particularly Section IV, Disclosure of Interest, paragraphs one through four, et seq. , and Unit Two, Part Three, Regulation of Environmental Hazards, et seq.
RULE TO SHOW CAUSE
At the outset, we note that the motion and order for appeal filed by Riedel on October 6, 2017 states that she is appealing from the judgment in favor of defendants, Frank and Theresa Cali, signed by the trial court on September 20, 2018, by the trial court when, in fact, the particular judgment rendered in favor of Frank and Theresa Cali as defendants was signed by the trial court on October 4, 2017. Thus, on April 25, 2018, this court issued a rule ordering that the parties show cause why the appeal should not be dismissed where it does not appear that a motion and order for appeal was filed and signed with reference to the October 4, 2017 judgment. Counsel for Riedel responded to the show cause order, explaining that he filed three separate motions for appeal of the three judgments rendered by the trial court following the August 28, 2017 hearing at the same time "out of an abundance of caution and to prevent missing the deadline to request appeal."
On review, and considering Riedel's explanation, we find that it is clear from Riedel's brief and the assignments of error set forth therein that she intended to appeal the trial court's October 4, 2017 judgment, which granted summary judgment in favor of Frank and Theresa Cali as defendants and dismissed Riedel's claims against them. Riedel's mistake in listing the incorrect date of the judgment in her motion for appeal is insufficient grounds for the dismissal of her appeal, particularly since appeals are favored and will be dismissed only when the grounds are free from doubt. See Byrd v. Pulmonary Care Specialists, Inc., 2016-0485 (La. App. 1st Cir. 12/22/16), 209 So.3d 192, 195 ; and In re: R.B. Jr. and C.H.B., 2018-0050, p. 3 (La. App. 1st Cir. 8/10/18), 2018 WL 3828795, *3 (unpublished). Accordingly, we find the merits of the October 4, 2017 judgment are properly before us on appeal. We hereby recall the show cause order previously issued herein.
DISCUSSION
Summary Judgment
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate.
*591 First Bank and Trust v. Sharp, 2017-0284 (La. App. 1st Cir. 2/20/18), 243 So.3d 16, 19.
A party may move for a summary judgment for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A)(1). A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. LSA-C.C.P. art. 966(E). However, a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden does not require that he negate all essential elements of the adverse party's claim, action, or defense, but rather to point to the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in LSA-C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Larson v. XYZ Insurance Company, 2016-0745 (La. 5/3/17), 226 So.3d 412, 417.
In the instant case, Riedel's cause of action against the Calis is based on claims of fraud pursuant to LSA-C.C. art. 1953, negligent misrepresentation, breach of contract, "re-habitation violations," and breach of fiduciary duties.[6]
"Fraud" is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953. In order to succeed on an action for fraud against a party to a contract, three elements must be proved: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. Robinson v. Wayne and Beverly Papania and Pyrenees Investments, LLC, 2015-1354 (La. App. 1st Cir. 10/31/16), 207 So.3d 566, 574, writ denied, 2016-2113 (La. 3/13/17), 216 So.3d 808. An otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective *592 if the seller commits fraud upon the buyer. See LSA-C.C. art. 2548.
The action for negligent misrepresentation arises ex delicto, rather than from contract. Osborne v. Ladner, 96-0863 (La. App. 1st Cir. 2/14/97), 691 So.2d 1245, 1257. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. Duplechin v.Adams, 95-0480 (La. App. 1st Cir. 11/9/95), 665 So.2d 80, 84, writ denied, 95-2918 (La. 2/2/96), 666 So.2d 1104. A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. Duplechin v. Adams, 665 So.2d at 84 ; see also LSA-R.S. 37:1455(A)(15) & (27). However, the duty to disclose any material defects extends only to those defects of which the broker or agent is aware. Osborne v. Ladner, 691 So.2d at 1257.
Any alleged misrepresentations that relate to defects that are apparent and discoverable on simple inspection, when inspection is afforded the buyer before the sale, and where the buyer inspects the property before the sale, precludes the buyer from then complaining of fraud or negligent misrepresentation. Long v. Bruns, 31,427 (La. App. 2nd Cir. 1/20/99), 727 So.2d 664, 669, writ denied, 99-0480 (La. 4/23/99), 742 So.2d 881. In other words, there can be no recovery for fraud or negligent misrepresentation for defects discoverable by simple inspection where the buyer inspects the property prior to purchasing it. It is the buyer's burden to prove that the alleged defects were hidden. Prejean v. Estate of Monteiro, 2015-0197 (La. App. 1st Cir. 9/18/15), 2015 WL 5515763, *4 (unpublished), citing Long v. Bruns, 727 So.2d at 669.
A realtor has a fiduciary duty to his client and a breach of that duty to the client is actionable under LSA-C.C. art. 2315. Hughes v. Goodreau, 2001-2107 (La. App. 1st Cir. 12/31/02), 836 So.2d 649, 660, writ denied, 2003-0232 (La. 4/21/03), 841 So.2d 793, citing Avegno v. Byrd, 377 So.2d 268, 274 (La. 1979). A real estate broker is a professional who holds himself out as trained and experienced to render a specialized service in real estate transactions. The broker stands in a fiduciary relationship to his client and is bound to exercise reasonable care, skill, and diligence in the performance of his duties. Mallet v. Maggio, 503 So.2d 37, 38 (La. App. 1st Cir. 1986), writ denied, 504 So.2d 880 (La. 1987). Generally, a broker's duties are limited to those which can be analogically drawn from LSA-R.S. 37:1454 and from the customs and practices of real estate brokers in general. Mallet v. Maggio, 503 So.2d at 38. Ultimately, the precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate agent undertakes to perform and the agreements he makes with the involved parties. Mallet v. Maggio, 503 So.2d at 38-39. The failure to disclose to a buyer a known material defect regarding the condition of real estate of which the broker or salesperson has knowledge is among a broker's duties analogically drawn from LSA-R.S. 37:1455 and from the customs and practices of real estate brokers in general. See La. R.S. 37:1455(A)(27).
With reference to Riedel's assignments of error on appeal challenging the trial court's grant of summary judgment as to liability regarding the existence of mold, the Calis contend that the "As Is/Where Is" waiver executed by Riedel precludes all claims for any alleged defects absent fraud and that Riedel failed to present any competent evidence to establish (1) that *593 mold existed in the condominium on or before the date of sale, i.e., May 9, 2014, and (2) that Frank or Theresa Cali knew or should have known of any alleged mold in the unit on or before the date of sale so as to prevail on her claim of fraud.
In support of their motion for summary judgment, the Calis offered exhibits, which included: (1) excerpts from Riedel's February 5, 2016, February 16, 2016, and May 26, 2016 depositions; (2) an owner finance application; (3) an agreement to buy or sell; (4) a property inspection response; (5) a settlement statement; (6) a recorded credit deed with power of attorney; (7) a ne varietur note; (8) an affidavit of Dale Brunet; (9) Brunet's Home inspection Report; (10) an online listing for the condominium; (11) Brunet's Home Inspection Authorization and Agreement; (12) Fenasci's deposition excerpts; (13) a RE/MAX Final Inspection Release; (14) an affidavit of Frank and Theresa Cali; (15) Yarborough's deposition excerpts; (16) Riedel's answers to interrogatories; (17) Theresa Cali's deposition excerpts; (18) Riedel's medical records; (19) Frank Cali's deposition excerpts; and (20) an affidavit of the notary public/closing attorney and witnesses to the credit deed.
On August 14 and 23, 2017, Riedel filed oppositions to the Calis' motion for summary judgment.[7] In support, Riedel offered several exhibits, including: (1) deposition excerpts of Riedel; (2) Brunet's Home Inspection Authorization and Agreement; (3) photos of Riedel; (4) letter from State Farm dated September 10, 2014; (5) deposition excerpts of Dale Brunet; (6) Brunet's Home Inspection Report; (7) Colonial Inspection Services's Mold Inspection Report; (8) Certificate of Mold Analysis; (9) Property Inspection Response Form; (10) photos of the property; (11) the affidavit of Dale Brunet; (12) the affidavit of Julie Hufft; (13) the affidavit of Dr. Kelvin Contreary; (14) the affidavit of Johnny Womack; and (15) the affidavit of Riedel.
Assignment of Error No. Two
As knowledge is a necessary element of the majority of Riedel's claims against Frank and Theresa Cali, we will first address Riedel's contention that the trial court erred in finding there was no genuine issue of material fact as to her claim of fraud. In order to prevail on her fraud claims against the Calis, Riedel must establish that the Calis knew or should have known that mold existed in the unit on or before May 9, 2014, the date of sale.
Theresa Cali testified that she had no knowledge of any mold or mildew or of any leaks in the condominium unit prior to the act of sale herein. Frank Cali testified that he had no knowledge that mold pre-existed the sale of the condominium, he had no knowledge of a mold and mildew problem in the unit prior to the act of sale, and further had no personal knowledge of any leaks in the unit prior to the act of sale. Frank Cali further testified that he had not lived in the unit since 1994 or 1995, that if Yarborough had known that there was mold in the condominium, Yarborough would have told him, and that none of his tenants, including Yarborough, had ever complained about leaks in the unit. Frank and Theresa Cali both testified that they personally collected monthly *594 mortgage payments from Riedel following the sale, and she never complained to them about anything in the unit, including mold or mildew, a strong odor, or that she and her children were feeling ill.
Yarborough, who had lived in the home prior to the sale, testified that he had no knowledge of mold, water damage, or anything of that sort as of the date of sale. He further testified that he did not think Frank and Theresa Cali had any knowledge of mold because they had not been in the home since he had moved in.
Fenasci testified that she was in the home for the initial walk-through and on two other occasions prior to the closing and that she did not see any evidence of defects, mold, or moisture on any of those occasions. Moreover, according to the home inspection report and affidavit of Dale Brunet, when Brunet conducted that home inspection on April 30, 2014, days before the sale, he found no visible evidence of mold, nor any conditions that would cause or warrant conducting further investigation or evaluation for mold.
In response, Riedel contended that the knowledge of Yarborough is imputed to the Calis and that Yarborough was aware of the findings in Brunet's home inspection report. Even if we were to agree that Yarborough's knowledge was imputed to the Calis, the home inspection report did not indicate the presence of mold. Although Brunet indicated in the inspection report that he found moisture damage on the exterior wall on the right side of the home, he explained that he found no visible evidence of mold, nor any conditions that would provide a reason to do further investigation or evaluation for mold.
Moreover, to the extent that Riedel contends that the State Farm denial letter and the Colonial mold inspection report state or could state with any certainty that any mold existed prior to the sale, she is simply incorrect. Even if we were to conclude that the subsequent inspections conducted in August and October showed the existence of mold, given Brunet's testimony that mold can develop within twenty-four to forty-eight hours, Hufft's opinion that mold "more than likely" pre-existed the sale and State Farm's determination that the damages of rot and deterioration were "long-term," are insufficient to establish that mold was present nearly three months earlier. Moreover, because the findings therein were made after the date of sale, they fail to raise a genuine issue of material fact as to fraud. See Shelton v. Standard/700 Associates, 2001-0587 (La. 10/16/01), 798 So.2d 60, 65.
On review, we find that Riedel simply failed to produce evidence to make the requisite showing to establish that Frank or Theresa Cali knew or should have known that mold existed in the unit on or before May 9, 2014. Because Riedel did not produce factual support sufficient to establish the existence of a genuine issue of material fact as to fraud, we find no error in the trial court's dismissal of this claim. Cf. Tyson v. Brentley Marchand, 2014-1767 (La. App. 1st Cir. 6/5/15), 2015 WL 3548159, *6-7 (unpublished) (where the mover on summary judgment seeking dismissal of fraud claims failed to present evidence to show that the seller knew or should have known of defects at the time of sale, the trial court's grant of summary judgment was reversed).
Assignments of Error Nos. Five and Six
Riedel contends in these assignments of error that the trial court erred in finding that there was no evidence showing that the property had mold before she purchased it and in ignoring or disregarding *595 the report and opinion of Riedel's mold expert, Julie Hufft.
Considering our finding above that Riedel failed to establish that Frank and Theresa Cali had knowledge that mold existed in the unit on or before May 9, 2014, even if we were to find that Riedel set forth competent evidence to create an issue of fact as to whether mold existed in the unit on or before May 9, 2014, she cannot prevail on her claim of fraud. As such, we find no merit to these assignments of error.
Assignments of Error Nos. Seven and Eight
In these assignments of error, Riedel contends that the trial court erred in dismissing her claims for breach of contract and redhibition. To the extent that Riedel's claim for "re-habitation violations" could be construed as a claim for redhibition or any claims of redhibition were otherwise asserted by Riedel in her petition for damages, we will address Riedel's contentions herein.
In support of their motion for summary judgment as to Riedel's claims in her petition, the Calis offered a purchase agreement executed by Riedel, which contained an "INSPECTION AND DUE DILIGENCE" clause allowing Riedel to have any inspections of the property after which she could either terminate the purchase agreement or request that the seller remedy any deficiencies. The purchase agreement further contained a "WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION" whereby Riedel acknowledged that the property was being sold in "as is" condition and waived and released the seller from any claims or causes of action in redhibition. The parties agreed that this clause would be made a part of the act of sale.
The Calis also offered the "PROPERTY INSPECTION RESPONSE" form, wherein Riedel specifically listed deficiencies that she requested be remedied based on the findings in the home inspection report she commissioned. Following the repair of these items by the seller, Riedel subsequently signed the form acknowledging her acceptance of the repairs made. Fenasci testified that she and Riedel attended the final walk-through inspection of the property and checked that the items had been repaired and that she was present when Riedel signed the final inspection release.
Finally, the "Credit Deed" executed by Riedel and offered by the Calis in support of their motion for summary judgment contained a valid and enforceable waiver in the "AS IS/WHERE IS" clause by which she purchased the property without any warranties and specifically waived any and all rights for the return of any part of the purchase price for apparent or hidden defects. She further expressly waived the warranty against redhibitory vices and defects, whether apparent or latent, as well as any rights she may have in redhibition.
It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. Coleman v. Jim Walter Homes, Inc., 2008-1221 (La. 3/17/09), 6 So.3d 179, 183. Riedel failed to offer any countervailing evidence to dispute the validity of the waivers executed herein.
Thus, after careful review of the evidence, we find no error in the trial court's dismissal of Riedel's claims of breach of contract, re-habitation violations, and redhibition, to the extent that any claims in *596 redhibition were asserted.[8]
Assignments of Error Nos. One, Three, Four, and Nine
In these assignments of error, Riedel contends that the trial court erred in dismissing her claims of negligent misrepresentation, failure to disclose pursuant to LSA-R.S. 37:1455(27), violation of agent/broker requirements concerning disclosure, as well as her claims arising from the actions of real estate agent Yarborough, which she contends are imputed to the Calis.
To the extent that these claims are based on Riedel's belief or assertion that Frank Cali owed a duty to her as an agent/broker in the transaction herein, we note that the Calis set forth documentary evidence relating to the purchase and sale of the property which indicated that Frank and Theresa Cali were only involved in the underlying transaction as owners or sellers of the property. The Calis further set forth the deposition testimony of Frank Cali that he did not act as a real estate agent or broker in any capacity in this transaction with Riedel. In response to this showing, Riedel failed to produce or offer any countervailing evidence to support or establish the existence of a genuine issue of material fact that Frank Cali was acting in the capacity of an agent/broker in the proceedings herein or otherwise owed a fiduciary duty to Riedel as such.
Moreover, to the extent that Riedel contends that the actions and knowledge of Yarborough are imputed to the Calis as his employers, we note that even assuming that Yarborough was in fact employed by Frank and Theresa Cali, Yarborough testified that he had no knowledge of any mold, water damage, or anything like that in the condominium as of the date of sale. Riedel failed to rebut this showing with any evidence which would establish that Yarborough had any knowledge of mold in the unit.
On de novo review, we find no error in the trial court's dismissal of these claims.
CONCLUSION
For the above and foregoing reasons, the April 25, 2018 Rule to Show Cause Order is recalled. The October 4, 2017 judgment of the trial court, granting summary judgment in favor of defendants/appellees, Frank and Theresa Cali, and dismissing all claims against them with prejudice, is hereby affirmed. Costs of this appeal are assessed to plaintiff/appellant, Deborah Riedel, individually, and on behalf of her minor children, Rachel Riedel and Jeremy Canzoneri.
SHOW CAUSE ORDER RECALLED; JUDGMENT AFFIRMED.
Higginbotham, J. concurs.
McClendon, J. concurs.

Riedel contends that she never received a copy of the report and, thus, did not read it, but that Fenasci advised her that the inspector found nothing wrong with the property.

"Fungus" is defined in the policy as "any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or by-products produced or released by fungi."

State Farm intervened, seeking a declaratory judgment in its favor against Riedel and Frank and Theresa Cali for a determination as to any contractual rights existing under the following policies issued to the Calis, to the extent that they sought indemnification from State Farm in the event that a judgment was ultimately rendered against them: (1) a rental condominium unit owners policy bearing No. 98-ET-5660-5: (2) a homeowners policy bearing No. 18-E3-5245-5; and (3) a personal liability umbrella policy bearing No. 18-E3-5174-3.

The trial court signed judgments on September 20, 2017, granting summary judgment in favor of the Calis as plaintiffs-in-reconvention, and on November 6, 2017, granting summary judgment in favor of Fenasci and Hollie Realty, L.L.C., which Riedel likewise appealed to this court, and which are addressed by us in companion appeals also handed down on this date. See Riedel v. Fenasci, 2018-0539 (La. App. 1st Cir. 12/28/18), 270 So.3d 795, 2018 WL 6839564, and Riedel v. Fenasci, 2018-0538 (La. App. 1st Cir. 12/28/18), 269 So.3d 995, 2018 WL 6818687.

As Riedel does not assign error to the trial court's grant of summary judgment on the issue of medical causation, the grant of summary judgment on the matter of medical causation is not before us and is final as to the parties herein.

The Calis contend in brief that Riedel abandoned her appeal of the trial court's grant of summary judgment as to medical causation and asserted no claims in redhibition; therefore, they contend the dismissal the dismissal of Riedel's claims against the Calis, with prejudice, is adjudged and final between the parties, irrespective of any liability issues, and calls for the affirmation of the dismissal of Riedel's suit in total. To the extent, however, that Riedel contends that the Calis are liable for breach of contract and "re-habitation violations," we will nonetheless address her contentions on appeal.

At the hearing on the motion for summary judgment, counsel for the Calis objected to the filing of Riedel's opposition for several reasons, including its timeliness under LSA-C.C.P. art. 966(B)(2), which requires that any opposition and documents in support be filed no less than 15 days prior to the hearing on the motion. The trial court overruled the objection and allowed Riedel to file her opposition, noting that it was "beyond what the law requires [him] to do."

Although an otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective if the seller commits fraud upon the buyer, see LSA-C.C. art. 2548 ; Shelton v. Standard/700 Associates, 798 So.2d at 64, we have already determined herein that Riedel failed to show a genuine issue of fact as to fraud, and the trial court correctly dismissed her claims of fraud against the Calis.