MARC E. JOHNSON, Judge.
12Plaintiff/Appellant, Renea Fanguy, appeals the sustaining of a peremptory exception of prescription in favor of Defendants/Appellees, Michael E. Graham, M.D. and Lexington Insurance Company, from the 24th Judicial District Court, Division “L”, pertaining to one of her medical malpractice claims. Additionally, Ms. Fanguy seeks supervisory review of the denials of her Motions in Limine to exclude the opinion of the medical review panel (“hereinafter referred to as “the Panel”) and the testimony of any of the Panel members who participated in the opinion. For the reasons that follow, we reverse the trial court’s ruling sustaining the peremptory exception of prescription, reverse the trial court’s denials of the Motions in Limine, and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
According to the pleadings, Ms. Fanguy had been a patient of Dr. Graham for obstetrics and gynecology occasionally since 1989. In her visit with Dr, |sGraham on September 17, 1996, Ms. Fanguy first complained of left-sided pelvic pain. Dr. Graham performed a laparoscopy on October 4, 1996, and multiple pelvic adhesions were lysed in an attempt to alleviate Ms. Fanguy’s left-sided pelvic pain.
On June 8, 2008, Ms. Fanguy went to the emergency room at Tulane Hospital complaining of abdominal pain in her lower left quadrant for the previous three days. The examination showed she was positive for lower left quadrant and super-pubic tenderness. An ultrasound performed showed a normal uterus and a right ovary that was slightly larger than the left.
In her follow-up visit with Dr. Graham on June 6, 2008, Ms. Fanguy complained of dyspareunia, dysmenorrhagia and hemor-rhagia. The examination was normal except for left adnexal tenderness and an enlarged uterus. On June 17, 2008, Dr. Graham performed another laparoscopy on Ms. Fanguy. This procedure yielded an adhesion from the proximal segment of the tube on the left hand side to the lateral pelvic sidewall and multiple ovarian cysts that appeared to be benign. In addition, there was a false pocket located consistent with endometriosis on the right uterosacral ligament, which was lasered.
Ms. Fanguy returned to Dr. Graham on December 1, 2008, complaining again of worsening left-sided pelvic pain described as a “constant ache” and increasing dyspa-reunia that was not relieved by the previous surgery. She also complained of heavy bleeding. Ms. Fanguy was scheduled for a hysterectomy to take place on December 26, 2008. Ms. Fanguy indicated that she wanted, at least, one ovary left in place, as she did not want to go into premature menopause. During the procedure, Ms. Fanguy’s uterus was found to be dysmorphic on the left side, which was pressing on the left side. The right ovary was noted to be totally encapsulated and stuck to the posterior aspect of the uterus. Ms. Fanguy’s right ovary was removed during the surgery.
|4On October 6, 2009, Ms. Fanguy had her first consultation with Dr. Susan Je-anfreau for a second medical opinion regarding her continued pelvic pain. Dr. Jeanfreau prescribed Ms. Fanguy Lupron Depot, a medication used for treatment of endometriosis, for treatment of her pelvic pain.
Ms. Fanguy filed a “Request for Review of Malpractice Claim by Medical Review Panel” against Dr. Graham with the Division of Administration on December 23, 2009. In her request, Ms. Fanguy alleged Dr. Graham’s care and treatment fell be *851 low the standard of care applicable to an obstetrician and gynecologist in treating her for chronic pelvic pain through: 1) failing to offer medical management, such as Lupron Depot therapy, of pelvic pain rather than the three ineffective surgeries which failed to adequately treat her condition; 2) failing to adequately discuss with her the appropriate medical options between medical management and removal of one or both ovaries to treat the pelvic pain; B) failing to obtain adequate consent for the surgery of December 26, 2008, as well as the two previous surgeries; 4) removing the right ovary at surgery, instead of the left or both ovaries; and 5) other acts or omissions constituting a breach of the standard of care applicable. The Panel found in its opinion rendered on March 9, 2011, that the evidence presented did not support the conclusion that Dr. Graham failed to meet the applicable standard of care as charged in the complaint. In the “Reasons” section of the opinion, the Panel found, among other things, that the consent forms signed by Ms. Fanguy for the surgeries were adequate, and Dr. Graham’s judgment to leave the healthy ovary (the left ovary) was a reasonable decision, considering the fact Ms. Fanguy requested to retain one ovary.
Ms. Fanguy filed a “Petition for Damages” against Defendants on April 1, 2011, asserting similar allegations as the request for review, to which Defendants filed an answer. On September 15, 2011, Ms. Fan-guy filed a “Motion in Limine to |sExclude the Medical Review Panel Opinion and Any Testimony of Defense Experts.” In the motion, Ms. Fanguy alleged that panel member, Dr. Vernon Carriere, is a business partner of Dr. Graham and should have been ineligible to serve on the Panel. As such, Ms. Fanguy alleged that Dr. Car-riere’s participation in the Panel tainted the entire opinion. Moreover, Ms. Fanguy alleged the Panel’s opinion does not conform to LSA-C.C.P. art. 1425, in that it does not contain sufficient information such that it will assist the trier of fact or that it can be deemed reliable, and it does not conform to the Daubert/Foret[1] requirements set forth in Cheairs v. State ex rel. Department of Transp. and Development, 03-0680 (La.12/3/03); 861 So.2d 536. Additionally, Ms. Fanguy alleged Defendants failed to submit a witness list, identifying which members of the Panel they intended to call as expert witnesses.
Subsequently, on September 22, 2011, Defendants filed a peremptory exception of prescription, alleging that any of Ms. Fanguy’s claims arising before December 21, 2008 were prescribed pursuant to LSA-R.S. 9:5628.
The exception of prescription and the motions were heard by the trial court on October 18, 2011. In a judgment signed on October 26, 2011, the trial court sustained the exception of prescription in favor of Defendants; granted the motion to exclude Dr. Carriere as a witness; denied the motion to exclude the Panel’s opinion and allowed it pursuant to LSA-R.S. 40:1299.47; and denied the motion to exclude the testimony of the defense experts (the two remaining members of the Panel). The motion for appeal was signed on November 8, 2011, and the instant appeal followed.
On November 28, 2011, Ms. Fanguy filed a supervisory writ seeking review of the trial court’s denials of the motions in limine to exclude the Panel’s opinion | fiand the defense experts. On the same date, Ms. Fanguy filed an “Unopposed Motion to Consolidate Application for Supervisory *852 Writs and Suspensive Appeal,” which was granted. As such, the issues raised in the writ application will also be addressed in this opinion.
ASSIGNMENTS OF ERROR
In the briefs submitted to this Court, Ms. Fanguy raises the following assignments of error: 1) the trial court erred in failing to apply the doctrine of contra non valentem to her claim and finding her Request for Review had prescribed because her medical malpractice claims for surgery and treatment were performed more than one year prior to her filing of the request; 2) the trial court erred in denying the Motion in Limine to exclude the Panel’s opinion as tainted; and 3) the trial court erred in denying the Motion in Limine to exclude any panel member from rendering expert testimony at trial, either because the opinion is legally defective pursuant to LSA-C.C.P. art. 1425 or because the opinion is legally defective due to its corrupt, tainted status.
LAW AND ANALYSIS

Exception of Prescription

Ms. Fanguy alleges the trial court erred in sustaining the peremptory exception of prescription pertaining to the claims arising prior to December 21, 2008. Ms. Fan-guy contends that prescription of her June 17, 2008, claim was suspended under the doctrine of contra non valentem pursuant to Carter v. Haygood, 04-0646 (La.1/19/05); 892 So.2d 1261, because the petition alleged a continuing tort claim. She avers that her petition alleged that she could not have known that Dr. Graham, her trusted physician of sixteen years, committed medical malpractice pri- or to December 26, 2008 due to Dr. Graham’s continued treatment of her and his failure to advise her of less invasive, pharmaceutical options |7throughout her treatment. She also avers the allegations in the petition more than sufficiently state a claim under the discovery exception provision of the Medical Malpractice Act. Because of her continuing tort allegation, Ms. Fanguy further contends that prescription is not evident on the face of the pleadings; therefore, the trial court erred in shifting the burden of proving the claim had not prescribed to her.
Defendants argue the trial court was correct in its determination because contra non valentem does not apply to Ms. Fan-guy’s June 17, 2008, claim. Defendants assert there was absolutely no evidence before the trial court to remotely suggest that Dr. Graham was aware of any of Ms. Fanguy’s alleged debilitating pain, let alone that he reassured her, attempted to remedy her alleged injury, or attempted to ameliorate her knowledge of the alleged malpractice. Defendants aver that, subsequent to Ms. Fanguy’s June 26, 2008, postoperative visit where she was noted to be healing normally, there is no notation of any further complaints of pain until December 1, 2008. And even at the December visit, Defendants further aver Ms. Fanguy voiced her desire for relief from multiple problems that were not limited to pelvic pain. In addition, Defendants assert Ms. Fanguy did not establish that she had more than a perfunctory relationship with Dr. Graham, and there was a complete absence of evidence that would even suggest Dr. Graham engaged in conduct that would prevent Ms. Fanguy from availing herself of a cause of action. Defendants further argue that contra non valentem does not apply pursuant to the discovery exception because Ms. Fanguy had constructive knowledge that the June 17, 2008, surgery did not relieve her symptoms.
The standard controlling review of a peremptory exception of prescription *853 requires that the appellate court strictly construe the statutes against prescription |Rand in favor of the claim that is said to be extinguished. Noble v. Estate of Melius, 10-549 (La.App. 5 Cir. 3/9/11); 62 So.3d 222, 226, citing Babin v. Babin, 08-776 (La.App. 5 Cir. 3/10/09); 10 So.3d 784, 785. On the trial of a peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931; Jensen v. City of New Orleans ex rel. New Orleans Aviation Bd., 10-917 (La.App. 5 Cir. 3/29/11); 64 So.3d 298, 301. When evidence is introduced at a hearing on an exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard. Id., citing Waguespack v. Judge, 04-0137 (La.App. 5 Cir. 6/29/04); 877 So.2d 1090, 1092. However, in the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, and all allegations thereof are accepted as true. Id. Ordinarily, the movant bears the burden of proof at the trial of an exception of prescription. In re Manus, 10-82 (La.App. 5 Cir. 5/25/10); 40 So.3d 1128, 1129, writ denied, 10-1460 (La.10/1/10); 45 So.3d 1099, citing Bertoniere v. Jefferson Parish Hosp. Service Dist. No. 2, 07-301 (La.App. 5 Cir. 10/30/07); 972 So.2d 328, 332. However, where a petition reveals on its face that prescription has run, the burden shifts to the plaintiff to show that his action has not prescribed. Id.
In the instant matter, Ms. Fanguy’s request for review was filed on December 23, 2009, alleging acts of Dr. Graham’s medical malpractice occurring in June 2008 and December 2008. On the face of the petition, the June 2008 claim was prescribed. As such, Ms. Fanguy bore the burden of showing that claim was not prescribed. The record is void of any evidence introduced at the trial on the |9merits.[2] Therefore, we must determine whether Ms. Fan-guy’s June 2008 claim is prescribed based upon the facts alleged in the petition.
LSA-R.S. 9:5628 controls the prescriptive period for medical malpractice actions and states that an action for damages against a health care provided must be brought within one year from the date of the alleged act or one year from the date of discovery of the alleged act with a three year limitation from the date of the alleged negligent act. In In re Manus, supra, this Court set forth the following regarding prescription, contra non valentem, and medical malpractice claims:
The Louisiana Supreme Court has held that both the one-year and three- *854 year periods set forth in La. R.S. 9:5628 are prescriptive periods, as opposed to preemptive periods. Being prescriptive periods, the time periods are subject to interruption or suspension and are susceptible to the doctrine of contra non valentem. Contra non valentem, which means that prescription does not run against a person who could not bring his suit, is a jurisprudential doctrine under which prescription may be suspended.
Contra non valentem applies in four general situations to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.
Both the third and fourth categories of contra non valentem have been applied to medical malpractice actions. The fourth category of contra non valen-tem, commonly known as the “discovery rule,” has been codified in La. R.S. 9:5628. However, as explained by the supreme court, the codified discovery exception of contra non valentem under La. R.S. 9:5628 is qualified in that it is made inapplicable after three years from the act, omission or neglect.
| ipThe third category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. When applied to medical malpractice claims, the supreme court has explained that “a doctor’s continuing professional relationship with his patient might give rise to the suspension or interruption of prescription.” The supreme court stated that the continuation of the special relationship between a doctor and patient offers the possibility of correction of the injury and, thus, may postpone the running of prescription. The supreme court reasoned that as long as the patient remains in the doctor’s care, he could reasonably expect a correction of the diagnosis or tortious treatment. (Citations omitted).
40 So.3d at 1129-1130.
In her petition, Ms. Fanguy alleges she first began experiencing pain in the left side of her pelvis on or about September 17, 1996. The petition further alleges the surgery performed by Dr. Graham on June 17, 2008 failed to resolve her left-sided pelvic pain, and she returned again on December 1, 2008 with a continued complaint of left-sided pelvic pain and dys-pareunia. The petition also alleges Dr. Graham’s treatment of Ms. Fanguy’s left-sided pelvic pain fell below the standard of care for gynecologists under the same or similar conditions and in particular that Dr. Graham:
[[Image here]]
(2) failed to obtain informed consent for the surgery on June 17, 2008, because he failed to:
(a) disclose reasonable therapeutic alternatives to the surgery with the patient;
(b) provide an adequate opportunity to the patient to ask any questions about the alternatives;
(c) adequately set forth the nature and purpose of the procedure to be performed on June 17, 2008.
(3) by drilling benign, functional, follicular cysts on June 17, 2008, which *855 procedure has no known benefit in the treatment of pelvic pain.
(4) failed to offer or recommend appropriate medical management of en-dometriosis ...
Inin addition, Ms. Fanguy alleged she continued to suffer post-operative, left-sided pelvic pain for which she had to seek additional treatment elsewhere. Also, the petition alleges that “[a]t no time, either before or after the second laparoscopy on June 17, 2008, which confirmed endome-triosis, did Dr. Graham recommend gona-dotropin-releasing hormone (GnRH) agon-ists. His failure to do so is contrary to the guidelines set forth by the American College of Gynecologists (ACOG).”
After review, we find the trial court was erroneous in finding that Ms. Fan-guy’s June 17, 2008, claim was prescribed. In her petition, Ms. Fanguy established that prescription had been suspended through the fourth category of contra non valentón. The petition alleges the “discovery rule” exception, in that it stated the June 17, 2008, surgery failed to resolve her left-sided pelvic pain. Although Ms. Fan-guy did not return to Dr. Graham until December 1, 2008, she had insufficient knowledge there was a remaining medical problem for the months between June 2008 and December 2008.
Therefore, we find the trial court erred in sustaining Defendants’ peremptory exception of prescription against Ms. Fanguy for any treatment or surgery performed more than one year prior to the filing of the request for review but within three years of the date of the treatment.
Motion in Limine to exclude the Panel’s opinion and expert testimony of the remaining panel members[3]
Ms. Fanguy alleges the trial court abused its discretion by failing to exclude the Panel’s opinion because Defendants’ and Dr. Carriere’s misconduct tainted the entire proceedings. Ms. Fanguy contends that Dr. Graham’s and Dr. Carriere’s failure to disclose their financial relationship violated LSA-R.S. 40:1299.47 of the Medical Malpractice Act. As such, Ms. Fanguy argues the violation of LSA-R.S. 11⅞40:1299.47 disqualified Dr. Carriere as an impartial panel member, and allowing the Panel’s opinion to be entered as evidence would be highly prejudicial to her case due to Dr. Carriere’s taint. Additionally, Ms. Fanguy argues the Panel’s opinion is legally insufficient under LSA-C.C.P. art. 1425 because it does not comply with the minimum legal standards for an expert report, and it does not contain sufficient information that will assist the trier of fact or can be deemed reliable. Because Ms. Fanguy argues the Panel’s opinion is tainted, she also argues the admission of the testimony of the remaining two panel members is improper.
Defendants argue there was no conflict presented to the trial court that would mandate exclusion of the panel members or the opinion. Defendants contend there is absolutely no evidence before the court to suggest that any of the panelists were biased or tainted. Defendants assert Dr. Carriere signed an oath, thus establishing that he could perform his duties as a panelist faithfully and without partiality, and no evidence was presented to establish that Dr. Carriere violated his oath.[4] Moreover, Defendants argue LSA-C.C.P. *856 art. 1425 does not apply to the Panel’s opinion because it does not mandate an exchange of expert reports, and LSA-R.S. 40:1299.47(H) is the more specific law that should apply, which allows the admissibility of the Panel’s opinion.
In this matter, the trial court granted Ms. Fanguy’s “Motion in Limine” to exclude Dr. Carriere as a witness; yet, the trial court denied the exclusions of the Panel’s opinion and the testimony of the two remaining members of the Panel. Ms. Fanguy’s motion alleged Dr. Carriere was ineligible to serve on the Panel because of his financial relationship with Dr. Graham. If the trial judge agreed with Ms. Fan-guy’s position that Dr. Carriere was ineligible to serve on the Panel, then it is illogical to allow the Panel’s opinion, in which Dr. Carriere participated, [1sto be entered into evidence at trial because the entire medical review process was tainted by Dr. Carriere’s participation.
Therefore, we find the trial court erred in denying the motion to exclude the Panel’s opinion because it was tainted by Dr. Carriere’s participation. Additionally, we find the trial court erred in denying the motion to exclude the testimony of the two remaining members of the Panel due to Dr. Carriere’s taint of the entire medical review. Accordingly, the writ application is granted.
DECREE
For the foregoing reasons, we reverse the sustaining of the peremptory exception of prescription by the trial court in favor of Lexington Insurance Company and Michael Graham, M.D., and against Renea Fanguy. Additionally, we find merit to the issues raised by Ms. Fanguy in her supervisory writ application and, accordingly, grant the writ. Lexington Insurance Company and Michael Graham, M.D. are to bear the costs of this appeal.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS; SUPERVISORY WRITS GRANTED

. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 628 So.2d 1116 (La.1993).

. We note there was an "Unopposed Motion and Order to Correct Record” filed by Ms. Fanguy on November 4, 2011. The motion asserted the record was incomplete because it lacked Ms. Fanguy's deposition and sought to have it corrected pursuant to LSA-C.C.P. arts. 2088 and 2132. The trial court signed the order allowing Ms. Fanguy’s deposition to be entered into the record on November 8, 2011. Although Ms. Fanguy's deposition has been supplemented into the record, we cannot consider it as evidence because there is no evidence it was properly filed into evidence at the trial court level. The record does not show that Ms. Fanguy established the proper foundation to allow a determination of whether the deposition was taken to perpetuate testimony and whether said deposition was admissible under the Louisiana Code of Civil Procedure. See, Gulf American Industries v. Airco Indus. Gases, 573 So.2d 481, 494, citing Boneno v. Lasseigne, 514 So.2d 276 (La.App. 5th Cir.1987). (See also, Hover v. Farber, 05-613 (La.App. 5 Cir. 1/31/06); 922 So.2d 637, 638, where this Court held, "[e]ven after the record has been transmitted to the appellate court, the record can be supplement by stipulation of the parties, by the trial court, or by order of the appellate court, only if the evidence was properly filed into the record in the trial court.”) (Emphasis added).

. Assignments of error two and three are being jointly discussed.

. It is noted that Defendants did not file a writ application seeking review of the trial court’s granting of Ms. Fanguy's motion to exclude Dr. Carriere's testimony.