STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-514

BEVERLY LEBOUEF

VERSUS

DR. JOSEPH O'DONNELL, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-3946 DIVISION B
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Billy H. Ezell, James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

GENOVESE, J., dissents and assigns written reasons.

GREMILLION, J., dissents for the reasons assigned by Judge Genovese

L. Paul Foreman
Raggio, Cappel, Chozen & Berniard
P. O. Box 820
Lake Charles, LA 70602
(337) 436-9481
COUNSEL FOR DEFENDANT /APPELLANT:
    Dr. Joseph O'Donnell

**John Gregory Bergstedt**
**Fraser, Wheeler & Bergstedt, L.L.P.**
**P. O. Box 4886**
**Lake Charles, LA 70606-4886**
**(337) 478-8595**
**COUNSEL FOR DEFENDANT /APPELLEE:**
    **LAMMICO**
    **Dr. Rachel Chua**

**Randall E. Hart**
**Broussard & Hart, LLC**
**1301 Common St.**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Beverly LeBouef**

**PETERS, J.**

The defendant in this medical malpractice, Dr. Joseph O'Donnell, appeals the trial court's denial of his peremptory exception of prescription. For the following reasons, we affirm the trial court judgment.

## DISCUSSION OF THE RECORD

On July 2, 2004, the plaintiff, Beverly A. LeBouef, filed a complaint with the Louisiana Patients' Compensation Fund seeking the appointment of a Medical Review Panel to consider her assertion that Dr. Rachal Chua had committed acts of medical malpractice which caused her damages. Specifically, she stated the following:

> Claimant Beverly A. LeBouef asserts that [Dr. Chua] breached the applicable standard of care during a surgical procedure performed at Women and Children's Hospital in Lake Charles, Louisiana[,] on or about July 18, 2003.

> Claimant alleges that the care Dr. Chua gave to Beverly A. LeBouef was below the required standard in that Dr. Chua caused injury to the patient's bowel which resulted in an infection, and then on July 20, 2003, during an exploratory surgical procedure, Dr. Chua provided substandard care by failing to locate and properly treat the source of the infection.

Ms. LeBouef amended her complaint by a letter dated November 14, 2005, wherein she added Dr. Joseph O'Donnell to the complaint. The specific complaints against both physicians, as amended, stated the following:

> As to Dr. Rachel Chua: On or about July 18, 2003, during a hysterectomy on Beverly LeBouef, Dr. Chua caused injury to patient's bowel which resulted in an infection, and then on July 20, 2003, during an exploratory surgical procedure, Dr. Chua provided substandard care by failing to locate and properly treat the source of the infection.

> Additionally or alternatively, Joseph O'Donnell, MD: on July 20, 2003, Dr. O'Donnell provided substandard care by failing to locate and properly treat the source of Ms. LeBouef's infection.

2

The malpractice action ultimately went to trial commencing on September 7, 2010, with both Dr. Chua and Dr. O'Donnell as defendants. On September 15, 2010, the jury returned a verdict finding no liability on the part of Dr. Chua, but found that Dr. O'Donnell had breached the standard of care required of him in providing medical services to Ms. LeBouef, and that his breach was the proximate cause of her damages. The jury then found that Ms. LeBouef's damages totaled $3,314,801.30. On December 23, 2010, the trial court executed a final judgment in favor of Ms. LeBouef and against Dr. O'Donnell after reducing the jury award to the maximum amount recoverable under La.R.S. 40:1299.42(B). Dr. O'Donnell then appealed the judgment to this court.

Before the merits of the appeal were considered, Dr. O'Donnell filed a peremptory exception of prescription in this court. Ms. LeBouef responded by filing a motion to remand the prescription issue to the trial court for its consideration. By an unpublished opinion rendered on September 14, 2011, and pursuant to La.Code Civ.P. art. 2163, this court remanded the matter to the trial court for its consideration of the exception of prescription. *LeBouef v. O'Donnell*, 11-921, p. 1 (La.App. 3 Cir. 9/14/11), 72 So.3d 487.

The trial court heard the prescription exception on November 22, 2011, and denied it, finding that the doctrine of *contra non valentem* applied to the facts herein. Dr. O'Donnell's appeal of that judgment is the matter now before us.

**OPINION**

This court, in *Leach v. Alonso*, 95-325, p. 7 (La.App. 3 Cir. 10/4/95), 663 So.2d 347, 348, *writ denied*, 95-2662, 666 So.2d 671, explained the doctrine of *contra non valentem* as follows:

> The doctrine of *contra non valentem* is an exception to the general rules of prescription which means that prescription does not run against a person unable to bring an action or a person who for

some reason is unable to act. The Louisiana Supreme Court in *Corsey v. State Dept. of Corrections,* 375 So.2d 1319 (La.1979), recited those situations in which the doctrine may apply to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiff's actions; (2) Where there was some condition coupled with the contract or coupled with the proceedings which prevented the creditor from suing or acting; (3) Where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action was not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

As noted in *Leach,* the doctrine has a "jurisprudential" origin. *Id.* The fourth situation set forth in *Leach* and originally recognized in *Corsey v. State Dep'. of Corrections*, 375 So.2d 1319 (La.1979), applies to the matter before us. This situation has been codified for medical malpractice purposes in La.R.S. 9:5628(A), but subject to a peremptive limitation. Louisiana Revised Statutes 9:5628(A) provides in pertinent part that a medical malpractice action shall be "filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect." Both periods are considered prescriptive periods, except that the three year limitation is peremptive. *Borel v. Young*, 07-419 (La. 11/27/07), 989 So.2d 42. With regard to what constitutes discovery in a medical malpractice action, the supreme court stated the following in *Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-11:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Percy v. State, E.A. Conway Memorial Hosp.*, 478 So.2d 570 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party

4

on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. *Ledet v. Miller*, 459 So.2d 202 (La.App. 3 Cir.1984), *writ denied*, 463 So.2d 603 (La.1985); *Bayonne v. Hartford Insurance Co.*, 353 So.2d 1051 (La.App. 2 Cir.1977); *Opelousas General Hospital v. Guillory*, 429 So.2d 550 (La.App. 3 Cir.1983). Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. *Gunter v. Plauche*, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987). The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct.

Additionally, the party asserting the exception of prescription bears the burden of proof at the trial of the exception unless prescription is evident on the face of the pleadings, and in that case, the burden shifts to the plaintiff to establish that the action has not prescribed. *Id.* In the matter now before us, Ms. LeBouef bore the burden of proof in establishing that prescription had not run when she joined Dr. O'Donnell to the litigation.

Ms. LeBouef's pleadings establish that her claim against Dr. O'Donnell arose on July 20, 2003, and that she filed her complaint against Dr. O'Donnell with the Louisiana Patients' Compensation Fund pursuant to La.R.S. 40:1299.41(E) on November 14, 2005. This was obviously well past the one year prescriptive period, but within the three year prescriptive period of La.R.S. 9:5628(A).

The record before us on the prescription issue consists of excerpts of deposition testimony and testimony taken at the trial on the merits, medical records, responses to pretrial discovery, and stipulations made at the trial on the exception. This evidence establishes that on July 18, 2003, Dr. Chua, a Lake Charles,

5

Louisiana OB/GYN physician, performed a hysterectomy surgery on Ms. LeBouef at the Women and Children's Hospital of Lake Charles. Immediately after the surgery, Ms. LeBouef began experiencing physical problems seemingly unrelated to the surgery. Realizing that something went wrong with the hysterectomy, Dr. Chua informed Ms. LeBouef that she needed to perform additional surgery to locate and correct what she suspected was a bowel perforation arising from the first surgery.

The exploratory surgery occurred on July 20, 2003. The caption of the one-page operative report prepared by Dr. Chua after completion of the surgical procedure lists Dr. O'Donnell, a Lake Charles, Louisiana surgeon, as having assisted in the surgery. The report itself makes no reference to the degree of Dr. O'Donnell's assistance. However, Dr. O'Donnell was much more than a mere assistant in the surgical procedure. Dr. Chua testified in her November 9, 2007 deposition that, not only did she consult with Dr. O'Donnell concerning the proper way to perform the exploratory surgery, but accepted Dr. O'Donnell's recommendation that a laparoscopic procedure be used rather than an open abdominal incision. Dr. Chua also acknowledged that she would not have performed such a procedure without the presence and involvement of Dr. O'Donnell in the operating theater. In fact, according to Dr. Chua, it was Dr. O'Donnell who actually examined the intestines during the procedure. When Dr. Chua reported the results of the second surgery to Ms. LeBouef, she made no mention of Dr. O'Donnell's participation in the procedure and only informed her patient that the surgery was unsuccessful in finding the cause of her current problems.

Soon after the second surgery, Ms. LeBouef was transferred to Christus St. Patrick Hospital of Lake Charles where she came under the care of Dr. Richard

Shimer, a surgeon and, incidentally, Dr. O'Donnell's partner. Dr. Shimer immediately performed a colon study which pinpointed the existing bowel perforation. Based on this colon study, Dr. Shimer performed a third surgery on July 25, 2003, and repaired the perforation. Ms. LeBouef remained under the care of Dr. Shimer and underwent a number of additional surgeries during her recovery process.

Ms. LeBouef asserts that, given her long recovery process, she did not become aware she might have a medical malpractice claim until the Spring of 2004 when she first saw the words "bowel perforation" in some of her medical records. After two other individuals suggested that she seek legal advice, she contacted her current legal representative on June 10, 2004. On June 24, 2004, her attorney obtained a certified copy of the medical records from the Women and Children's Hospital. Within a few days thereafter, on July 2, 2004, Ms. LeBouef filed a request for a medical review panel with Dr. Chua as the only named defendant.

By early September of 2004, Ms. LeBouef had retained Dr. Steven Cruikshank, a gynecological surgery expert, to assist her in her claim. On September 24, 2004, Ms. LeBouef's attorney mailed a copy of the Women and Children's Hospital medical records to Dr. Cruikshank for his review. Dr. Cruikshank found nothing in the medical records provided to him that suggested any act of malpractice by Dr. O'Donnell. According to Dr. Cruikshank, nothing in the medical records of Women and Children's Hospital caused him to suspect that Dr. O'Donnell had chosen the surgical approach or had taken a direct part in the operative procedure. He suggested as a minimum, the medical records should have contained a separate operative note dictated by Dr. O'Donnell confirming his direct participation.

It was not until Ms. LeBouef's attorney took Dr. Chua's deposition on November 9, 2005, that she became aware of the extent of Dr. O'Donnell's involvement in the second surgery. Five days later, on November 14, 2005, Ms. LeBouef amended her medical review panel request by adding Dr. O'Donnell as a defendant.

In arguing that the trial court erred in not granting his exception of prescription, Dr. O'Donnell first asserts that prescription began at the earliest in the Spring of 2004 when Ms. LeBouef saw the bowel perforation notation in her medical records, and at the latest in September of 2004 when Dr. Cruikshank examined the medical records from Women and Children's Hospital. That is to say, Ms. LeBouef, in either situation, had sufficient notice to excite her attention and put her on guard to such an extent as to require her to make an additional inquiry and investigate further. *Campo*, 828 So.2d at 510. Had she made further inquiry, Dr. O'Donnell asserts, she would have discovered his direct involvement in the July 20, 2003 surgery in sufficient time to avoid her claim prescribing. He further argues that the trial court erred in not ruling on its objection to the relevancy of Dr. Cruikshank's testimony.

At the trial on the exception of prescription, Dr. O'Donnell did not object to the content of Dr. Cruikshank's stipulated testimony. Instead, he argued that it should not have been allowed because his expert opinion was irrelevant to the issue of prescription. In support of this argument, Dr. O'Donnell relies on this court's holding in *Anderson v. Beauregard Memorial Hosp.*, 97-1222 (La.App. 3 Cir. 3/6/98), 709 So.2d 283. We find the holding in *Anderson* to be distinguishable from the matter before us.

In *Anderson*, the expert at issue attempted to testify concerning the type of information the plaintiff should have been provided concerning her medical

8

situation and how that information should have been communicated to her. In affirming the trial court's rejection of that testimony, this court stated:

> We agree with the trial court that on the issue of prescription Dr. Kamm's expert testimony was not necessary. The trial court had to determine when Paula discovered that she was infected with hepatitis C which could have resulted from the 1974 blood transfusion. This was a fact question. Dr. Kamm never treated her and had no knowledge of when she learned she had hepatitis C. How Paula should have been notified has no relation to when she actually discovered she was infected and, therefore, has no bearing on whether the Andersons' claims were prescribed. Dr. Kamm's testimony might have been relevant to other aspects of the case but not to prescription.

*Id.* at 287.

In rejecting the testimony in *Anderson*, this court also noted that La.Code Evid. art. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Additionally, "[t]he decision of whether to accept a witness as an expert in trial is one left to the much discretion of the trial court." *Anderson*, 709 So.2d at 287.

In the matter now before us, the issue crucial to Dr. O'Donnell's argument that the trial court erred in not granting his exception of prescription is that it was clear on the face of the medical records that a claim against Dr. O'Donnell should have been investigated upon first receipt of those records. Dr. Cruikshank's testimony only addressed what those records did or did not reveal to him in his review. This was specialized knowledge helpful to the trier of fact in understanding the evidence and in determining a fact at issue. We find no abuse of discretion in the trial court's decision to allow Dr. Cruikshank's stipulated testimony on this issue.

9

Additionally, we find no merit in Dr. O'Donnell's argument that the trial court erred in denying his exception of prescription. Ms. LeBouef timely acted on her suspicions derived from her evaluation of the medical records in the Spring of 2004. Within weeks of consulting an attorney thereafter, she filed her July 2, 2004 claim against Dr. Chua. We have nothing in the record now before us concerning the response by Dr. Chua to the claim filed against her, but must conclude that she made no effort in her response to point out Dr. O'Donnell's involvement in the July 20, 2003 surgery. Absent any other information at the time, Dr. Cruikshank found nothing in his evaluation of the claim to suggest that anyone than Dr. Chua had any potential liability.

While discovery did take a slow pace in this litigation, there is evidence that Dr. Chua's deposition had been scheduled at least once before the November 7, 2005 deposition, and seven days after taking that deposition, Ms. LeBouef joined Dr. O'Donnell as a defendant in the legal proceedings. At this point, the matter was still pending before the medical review panel.

In argument before the trial court, Ms. LeBouef's attorney recalled the catastrophic situation in South Louisiana resulting from Hurricanes Katrina and Rita which struck that area in September of 2005. These storms caused damage to courthouses as well as law offices within the area to the extent that the Governor of the State of Louisiana issued three separate executive orders (Executive Order Numbers KBB 2005-32, KBB 2005-48, and KBB 2005-67) suspending prescription, preemption and other deadlines from Monday, August 29, 2005, through Friday, November 25, 2005. While these Executive Orders had no effect on the prescription issue, the damage caused by the hurricanes certainly impeded the legal process.

10

Finally, Ms. LeBouef noted that to require her to name Dr. O'Donnell as a defendant simply because his name appeared on a medical record would create problematic public policy in that it would require a plaintiff to file suit against everyone even peripherally associated with a procedure. To deny a plaintiff the right to rely on the content of a medical record and require a blanket filing requirement would be burdensome to both the plaintiff and those without liability who nonetheless must be named in order to satisfy this requirement. Ms. LeBouef also alludes to the fact that such a requirement could inadvertently facilitate manipulation of the justice system by an offending physician, who could simply couch medical records in such a manner as to hide his or her malpractice until prescription has run.

The trial court's determination on this issue is fact intensive, and the scope of review for the trial court's factual findings has long been established.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989).

Additionally, Louisiana jurisprudence provides that when evaluating a statutorily established prescription right, the rule is strictly construed against the mover of the exception. *Taranto v. La. Citizens Prop. Ins. Corp.*, 10-105 (La. 3/15/11), 62 So.3d 721.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment denying the exception of prescription filed by Dr. Joseph O'Donnell. We assess all costs of this appeal to Dr. O'Donnell.

**AFFIRMED.**

BEVERLY LEBOUEF

VERSUS

DR. JOSEPH O'DONNELL, ET AL.

**GENOVESE, J., dissents and assigns the following reasons.**

In this medical malpractice case, an adjudged non-joint tortfeasor, Dr. O'Donnell, filed an exception of prescription while this case was on appeal from a jury verdict finding him 100% at fault on the basis that he was not timely sued after Ms. Lebouef's hysterectomy surgery resulted in a perforation of her bowel. We remanded the exception of prescription to the trial court for consideration and a ruling on the exception. The trial court found the doctrine of contra non valentem applicable and denied Defendant O'Donnell's exception of prescription. Dr. O'Donnell appealed.

It is factually undisputed that Ms. Lebouef underwent a laparoscopic hysterectomy on July 18, 2003, by Dr. Chua. Ms. Lebouef experienced complications (a suspected bowel perforation), and thus another surgery was performed on July 20, 2003, again by Dr. Chua, but assisted by Dr. O'Donnell. No evidence of bowel perforation was found, but complications persisted. Hence, on July 25, 2003, a third surgery was performed, and it was performed by a Dr. Shimer.

Ms. Lebouef testified that she decided to pursue a medical malpractice claim "in the Spring of 2004." She contacted an attorney on or about June 10, 2004. Her attorney obtained her medical records on June 23, 2004. Dr. Chua was sued on July 1, 2004, alleging malpractice as a result of the July 18 and 20, 2003 surgeries.

In September of 2004, Ms. Lebouef's attorney hired a medical expert, Dr. Cruikshank. Dr. O'Donnell was not sued until November 1, 2005.

Thus, Ms. Lebouef's action against Dr. O'Donnell is prescribed "on its face"; therefore, she bears the burden of proving that her case has not prescribed. This, she failed to do. The jury found no liability on the part of Dr. Chua and found Dr. O'Donnell 100% at fault; hence, there is no interruption of prescription since there was no joint liability. Dr. O'Donnell was the only person found at fault, and his fault was found by the jury to be 100%.

The facts are that Ms. Lebouef failed to sue Dr. O'Donnell for some seventeen months after hiring an attorney and some fourteen months after hiring a medical expert. She had to have two additional surgeries within five days of the first surgery. Obviously, she was aware that something went wrong. A laparoscopic hysterectomy does not require three surgeries.

The jurisprudence states that "[p]rescription in a medical malpractice action commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead." *Id*. at 510-11.

In the case at bar, at least by the time Ms. Lebouef had hired an attorney, obtained her medical records, and her attorney had hired a medical expert, surely she had constructive knowledge of a tort (medical malpractice). Maybe she didn't know precisely which physician was responsible for the medical malpractice, but even with three surgeries, it could have only been one or more of only four doctors. The issue is was it reasonable for Ms. Lebouef to only sue one physician. I think not. Having known of the perforation of her bowel as a result of having three

surgeries for a routine laparoscopic hysterectomy, any reasonable person (going through such an ordeal), without a doubt, would or should have sued all surgeons involved in all three surgeries. A simple reading of the medical records would have revealed all of the surgeons involved, whether assisting or acting alone. Plaintiff only sued one of her four surgeons. Additionally, she failed to implement adequate discovery after suing Dr. Chua in order to adequately determine which surgeon or surgeons was/were at fault in perforating her bowel. In summary, she failed to make any reasonable inquiry in the matter.

I disagree with the majority opinion in this case. In my view, this case has prescribed according to La.R.S. 9:5628(A). I would reverse the trial court and grant Dr. O'Donnell's exception of prescription.