WICKER, J., CONCURS WITH REASONS |1SI agree with both the writer’s, well-written analysis and the outcome in this case but respectfully concur to express my opinion that, pursuant to the La. R.S. 9:5628 discovery rule, the date on which prescription began to run in this case is June 17, 2015, the date on which Ms. Glover’s family received the autopsy report. As the writer succinctly explained, Ms. Glover, a stroke victim, was transported at the request of her family to Ochsner Foundation Hospital on March 17, 2015. Thereafter, she was treated until her death by Dr. Iwuchukwu, known to the Glover family as “Dr. Obie and/or “Dr. Arden,” and other Ochsner physicians. Throughout Ms. Glover’s Ochsner hospitalization, she suffered multiple setbacks, including a reaction to CT scan with contrast, issues resulting from a clumsy nasogastric tube placement, and complications from a urinary tract infection. While Ms. Glover remained hospitalized, her family met with Dr. Obie to discuss their treatment-related concerns. Dr. Obie repeatedly, reassured the family that everything-was alright but that their mpther had suffered a significant stroke. On April 1, .2015, Ms. Glover underwent surgery for- placement of a PEG (percutaneous endoscopic gastronomy) tube. Her condition continued to deteriorate thereafter and she died on April 12, 2015. Soon after her death, Ms. Glover’s family received her death certificate which listed the causes of her death as: a.) septic shock; b.) UTI (urinary tract infection); c.). acute, respiratory failure; d.) CAV (stroke). On June ‘ 17, 2015, ^approximately two months after Ms. Glover’s death, the Glover family received the autopsy report they had privately requested and learned that the.first cause of Ms. Glover’s death was: 1.0 Chemical peritonitis 1.1 Post percutaneous1 endoscopic gas-trostomy (PEG) tub placement with distal end within peritoneal cavity 1.2 Red, dull intestinal serosal surfaces "with exudate 1.3 Peritoneal, effusion, ,3600 ml milky lipid-rich fluid . In my opinion, since, based upon the death certificate, the Ochsner physicians themselves did not know that improper placement or dislocation of the PEG tube into her peritoneal cavity contributed to Ms; Glover’s death, it was impossible for the Glover family' members to discover that the- improper placement of the PEG tube contributed to Ms. Glover’s death before they received the June 17, 2015 autopsy report. Thus, in my opinion, prescription did not begin - to run on either the survival or wrongful death claim until that date. The Louisiana Supreme Court, in two opinions authored by Justice Jeanette Knoll, has opined that La. R.S. 9:5628, the Medical Malpractice prescriptive statute, sets forth a tripartite prescription provision. In Campo v. Correa, 01-2707 (La. 6/21/02), 828 So.2d 502, and Carter v. Haygood, 04-0646 (La. 1/19/05), 892 So.2d 1261, the Louisiana Supreme Court explained that La, R.S. 9:5628 first sets forth the one year prescriptive period which parallels the general' tort prescriptive period set forth in La. Civ. Code Art. 3492. Second, in cases involving damages' that are not immediately apparent, Section 5628 codifies the contra non valentum discovery exception originally created in Louisiana Jurisprudence. See Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b) 222 (1996). Finally, the statute sets forth a preemptive date three years from the date of the alleged act, omission or neglect. Campo v. Correa, 01-2707 (La. 06/21/02), 828 So.2d 502; Carter v. Haygood, 2004-0646 (La. 01/19/05), 892 So.2d 1261. The discovery extension of the general tort prescriptive period addresses itself to prongs three and four of the jurisprudential contra non valentem doctrine: (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Campo, supra, and Carter, supra. In 2002, in Campo v. Correa, supra, the Court held that in cases involving damages that are not immediately apparent or immediately knowable, the action prescribes one year from the date of discovery of the alleged act, omission or neglect if the patient was not unreasonable in failing to discover that the treatment was the alleged cause of the condition. The discovery rule applies in this instance even if the defendant health care provider did nothing to induce the patient’s ignorance of the alleged act, failure to act, or omission. See also In re Med. Review Panel Claim of Hume, 14-0844 c/w 14-0845 (La. 4 Cir. 4/1/15), 165 So.3d 233; Fanguy v. Lexington Ins. Co., 12-136 c/w 11-1102 (La App. 5 Cir. 11/13/12), 105 So.3d 848, affirmed in part, reversed in part on other grounds, 13-0114 (La. 4/1/13), 110 So.3d 127; Ferrara v. Starmed Staffing, LP, 10-0589 (La. App. 4 Cir. 10/6/10), 50 So.3d 861. Thereafter, in 2005, in Carter v. Haygood, supra, the Louisiana Supreme Court opined that the discovery prong of Section 9:5628 also applies in instances in which the- patient alleges that defendant health care providers provided continuing treatment coupled with the defendant(s) alleged assurances to the patient that the health care provider(s) could remedy the problem, if the patient was not unreasonable in relying upon the treating health care provider’s assurances. 11fiImportantly, the Court opined that a petition should not be found prescribed on its face if brought within one year of the date of discovery and the plaintiff alleges facts in- the petition with particularity which show that the patient was unaware of the malpractice prior to the alleged date of discovery, and the delay in filing was-not due to willful, negligent or unreasonable action of the patient. The Court further held that a petition is not prescribed on its face if filed within one year of the conclusion of treatment provided by the defendant health care provider(s) and the defendant(s) continued to assure the patient that the problem could be remedied and the patient was not unreasonable in relying upon the treating health care provider’s assurances. Campo, 828 So.2d at 509. Therefore, if the plaintiff has made a prima facie showing that the action was filed within one year of the date of discovery and within three years from the date of the alleged act, omission or neglect and the patient was not unreasonable in his or her failure to discover the alleged malpractice, the burden of proof at the trial of the peremptory exception rests upon the defendant health care provider and does not shift to the plaintiff, as it would if the action was prescribed on its face. Id.[10] In this case, the majority found that the Glover family made a prima fade case that the defendant health care providers continued to render treatment and assure Ms. Glover and family members that their concerns were under control and, further, that the Glover family was reasonable ⅛ this reliance,' thus making April 12, 2015, the date Ms. Glover died, the first date upon which prescription could have begun to run. I am of the opinion, however, that the Glover family was reasonable in failing to discover that Ms. Glover’s death was related to | ^complications resulting from an improper placement or dislocation of the PEG tube into the peritoneal cavity until receipt of the autopsy report. Therefore, it is my opinion that prescription did not begin to run in this case until June 17, 2015, the date on which the Glover family received the private autopsy report, rendering the majority’s discussion of the assignment of error concerning the Division of Administration’s receipt of the “First Supplemental and Amending Complaint” and the accompanying June 2, 2016 check payment moot. . There seems to be confusion in the courts of appeal following the Campo and Correa decisions in that the courts continue to analyze cases by ^subjecting the plaintiff to the burden of proof even in the face of a prima facie showing that the discovery prong of the prescriptive statute applies. See for instance LeBouef v. O’Donnell, 12-514 (La. App. 3 Cir. 12/12/12), 106 So.3d 1160.